## JOHN YANCY v. THE STATE.

### No. 2972. Decided April 26, 1905.

**1.—Murder—Continuance—Diligence.**

Where process was issued from Rusk to Red River County and returned Jan. 14 and the case went to trial on the 23d of the same month, and no other act of diligence is shown to secure the witness, the diligence is not sufficient.

**2.—Same—Materiality of Testimony—Not Probably True.**

Where the defendant while on the witness stand controverted the theory of the testimony set out in his application for continuance, the same was not material or probably true and there was no error in overruling his motion for continuance on account of the absent witness.

**3.—Same—Testimony Not Probably True and Immaterial.**

Where defendant himself admits that he did the shooting, it would appear to be rather immaterial that his wife, for whose absence he asked a continuance, would swear that the single barrel shotgun was at another place at the time of the shooting. Besides, in the light of the overwhelming testimony to the contrary, it was not likely that the wife would have testified to that effect, or that if she had that it would likely have had any effect, as it was not probably true, and there was no error in overruling his application for continuance.

**4.—Same—Eye-Witness—Circumstantial Evidence.**

Where the eye-witness to the homicide, whom the State refused to place on the witness stand on motion of defendant, was implicated in the homicide, and had been previously indicted for the same and the indictment dismissed against him; and where he was introduced by the defendant and testified to some material facts in his behalf, there was no error in the court's action in overruling a motion that the State place him on the stand because the State's evidence was circumstantial. Questioning Thompson v. State, 30 Texas Crim. App., 325.

**5.—Same—Charge of Court—Self-Defense.**

Where the evidence showed that defendant and another, who were on one side of the difficulty, shot and killed two men on the other side of the difficulty, the defendant being on trial for the alleged murder of a certain one of the said two men slain, and the jury were instructed that the defendant was authorized to act in self-defense as against one or both of these two men, but the jury were not authorized to convict him except for the alleged murder of said certain one, there was no error in refusing a requested charge that if defendant's companion killed the other it could not affect the defendant.

**6.—Same—Charge of Court—Circumstantial Evidence.**

Where in addition to defendant's confession, an eye-witness to the homicide testified for him to the facts of the killing; besides the defendant's own testi-

mony that he did the killing, there was no error in failing to charge on circumstantial evidence. It is only where the case is one wholly of circumstantial evidence, that it is necessary to charge on this subject: Confessions alone will take the case out of the rule.

**7.—Same—Argument of Counsel—Misstatement.**

A misstatement of counsel, whether inadvertently or intentionally made, unless some injury be shown, is not reversible error.

**8.—Same—Charge to Exclude Necessary.**

Where no charge is requested to exclude objectionable argument of counsel, it can not be reviewed, even if in fact such language of counsel was improper or not called for.

**9.—Same—Former Provocation—Charge of Court.**

Where the evidence showed that the deceased and defendant had an altercation late in the evening before the night of the homicide, which caused or led up to it and during which deceased made threats to kill defendant that night, upon which phase of the case the court submitted full instructions, there was no error in refusing to charge on former provocation; that issue not being in the case.

**10.—Same—Bill of Exceptions—Practice on Appeal.**

Where the bill of exceptions fails to recite the answer to the question against which objection was raised, the question cannot be reviewed on appeal, and the court cannot look to the statement of facts to help out the bill; although this showed that the State's witness was simply permitted to refresh his memory and there was no attempt to impeach him by the State.

**11.—Same—Charge of Court—Manslaughter—Self-Defense.**

See opinion for charges on manslaughter and self-defense which were correct and not calculated to confuse the jury.

Appeal from the District Court of Rusk. Tried below before Hon. Richard B. Levy.

Appeal from a conviction of murder in the second degree; penalty, fifteen years imprisonment in the penitentiary.

The opinion states the case.

*R. T. Brown* and *Buford & Buford,* for appellant.—On question of continuance: Harris v. State, 18 Texas Crim. App., 287; Miller v. State, 18 Texas Crim. App., 232; Irvine v. State, 20 Texas Crim. App., 12; Phipps v. State, 34 Texas Crim. Rep., 560; Hardin v. State, 49 S. W. Rep., 607.

The court erred in overruling appellant's motion to require the State to put the only eye-witness to the homicide on the stand, and in permitting the State to introduce each and all the nine witnesses as to circumstances, when there was an eye-witness, Wash Jenkins, who was competent to testify, in the courthouse at the time, sworn as a witness and placed under the rule; all of which was known to the State. The State must introduce the best evidence of which the case is susceptible, and can not deprive the defendant of his rights given him under the law of cross-examination. Thompson v. State, 30 Texas Crim. App., 325.

On question of circumstantial evidence: Veasly v. State, 85 S. W. Rep., 274; Puryear v. State, 28 Texas Crim. App., 73, 11 S. W. Rep., 929; Leftwich v. State, 34 Texas Crim. Rep., 489, 31 S. W. Rep., 385.

*Howard Martin,* Assistant Attorney-General, and *N. B. Morris,* for the State.

HENDERSON, Judge.—Appellant was convicted of murder in the second degree, and his punishment assessed at confinement in the penitentiary for a term of fifteen years; and prosecutes this appeal.

The theory of the State was that appellant and Lewis Jenkins entered into a conspiracy to kill deceased Arthur Gray, and that they prepared themselves on the night of the homicide and lay in wait for deceased. Deceased approached on foot where they had located themselves in the fence corner on his way to Wash Jenkins', who lived nearby, and his son Shelly Gray accompanied him on horseback, and as they approached where the parties had concealed themselves, they shot and killed both of the Grays and fled from the place of the homicide. The theory of the defendant was that deceased had threatened to kill him the evening before, and at night appellant and Lewis Jenkins had a casual meeting with deceased and Shelly Gray, when deceased and Shelly Gray attempted to shoot and kill him, and he shot and killed deceased Arthur Gray and his son Shelly. He also introduced some testimony showing that Lewis Jenkins might have killed one of the parties.

Appellant assigns as error the action of the court overruling his motion for continuance. The application contains a number of names, but appellant in his brief appears to have abandoned all of the witnesses except Lige Tucker and Mrs. Mary Yancy, wife of appellant. As to the latter sufficient diligence was shown, but we are inclined to believe that as to Lige Tucker, appellant did not show adequate diligence. Process was issued for this witness to Red River County and returned "not found" on January 14th. The case went to trial on January 23rd. In the interrim no other act of diligence is shown to secure this witness. However, it does not occur to us that the testimony of said witness was material, or in the light of the evidence that the same was probably true. By witness Lige Tucker appellant says he expected to prove that he had agreed to go to Wash Jenkins' house, which was in the vicinity of the homicide, to let Lige Tucker have a mule to ride that night to preaching at Kilopre; that appellant's mules were at Wash Jenkins', and that he met deceased and his son Shelly Gray while he was on the way down there. This testimony was for the purpose of showing that appellant was not lying in wait at the time, but was on his way to Wash Jenkins' house for a legitimate purpose. This might have appeared material but for the fact that appellant himself when on the witness stand directly controverts the proposition that he was on the way from his house to Wash Jenkins', in order to let Lige Tucker have a mule to ride to church. He says that he was going down there in order to separate the mules, and that he took Lewis Jenkins along to help him turn them in the pasture; that he did not go down there to turn one of the mules over to Lige Tucker. Lige Tucker was to ride the old mule to church Sunday morning,

and he so understood it. Certainly, upon a point of this character appellant would not desire a witness to contradict his own testimony.

As to the witness Mrs. Yancy, the application says that she would testify that at the time of the shooting, the single barrel shotgun, which the State claims was one of the weapons with which the shooting was done, was then at the home of appellant. In view of the fact that appellant himself admits that he did the shooting, it would appear to be rather immaterial with what particular weapon he may have done it. However, in view of the testimony in this case, we are inclined to believe that Mrs. Yancy would not likely swear that the single barrel shotgun was at home at the time the shooting occurred. The State showed by overwhelming testimony that on the next morning, one barrel of the double barrel shotgun appeared to have been freshly discharged, and that the single barrel shotgun appeared to be freshly discharged. It was also shown that two parties ran from the place of the homicide and across the field towards appellant's home. That on the way both of said parties fell down, and some object appeared to fall with them, which seemed to be guns. Both of these guns were found to be muddy the next morning: it having rained the night before. Besides, appellant is shown to have stayed in the crib of a neighbor that night, and to have had the single barrel shotgun with him. His explanation as to how he came to get that single barrel shotgun to carry to the crib with him does not appear to us to be reasonable. So, we say, in view of the testimony as to this single barrel shotgun, even if Mrs. Yancy would swear to the fact that it was at her house during all that night, it would not likely have had any effect on the jury as it was not probably true. The court did not err in overruling appellant's motion for continuance.

Appellant questions the action of the court in not requiring the State on his motion to put Wash Jenkins on the stand, it being alleged in said motion that Jenkins was an eye-witness to the homicide, and that the State introduced no eye-witness, but relied exclusively on circumstantial evidence in order to inculpate appellant in the homicide. To sustain this contention appellant refers us to Thompson v. State, 30 Texas Crim. App., 325. Since the rendition of the opinion in that case, the doctrine therein announced has been very much modified, if not overruled. Kidwell v. State, 35 Texas Crim. Rep., 264; McCandless v. State, 42 Texas Crim. Rep., 655; Holloway v. State, 8 Texas Ct. Rep., 619; Freeman v. State, 10 Texas Ct. Rep., 895. The rule referred to in Thompson's case grew up when the accused was not authorized to introduce witnesses, but all witnesses were introduced by the government. Mr. Bishop says, "In general a party, whether State or defendant, is permitted either to call or decline to call any competent witness. Some courts deem that the prosecuting officer ought, in murder or like crimes, to call as witnesses all who were present at the transaction, whatever be the nature of their testimony. Others regard it properly within his discretion, to produce such witnesses, and such only as he

thinks best." In Kidwell's case, supra, motion was made to require the State to introduce all of the eye-witnesses which was refused, and this was assigned as error. This court held that it was not. In Holloway's case, supra, which in its facts is very much like the case at bar, it is said, "after the State had rested its case on purely circumstantial evidence, appellant requested the court to require the State to put Hardy on the stand, who was an eye-witness to the transaction, insisting that, where there was an eye-witness, the State was required to place such eye-witness on the stand. In this connection we are referred to Thompson v. State, 30 Texas Crim. App., 325. The doctrine announced in that case was discussed in McCandless v. State, 42 Texas Crim. Rep., 655, and the views therein announced were seriously questioned." It is further said in Holloway's case, "that the eye-witness was a brother-in-law of appellant and was unfriendly to the State; and besides had previously testified that he was so drunk that he knew nothing about the facts of the case." It was held in that case, under those circumstances that the court did not err in refusing to require the State to put the only eye-witness on the stand. In this case, it appears that Wash Jenkins the eye-witness was implicated in the homicide, and had been previously indicted and the indictment dismissed against him. He was introduced by appellant and proved some very material facts on his behalf. We do not believe the court erred in refusing appellant's motion to put this witness on the stand in behalf of the State.

Appellant asked a charge predicated on the killing of deceased and Shelly Gray by appellant and Lewis Jenkins acting in concert; that is, the requested instruction told the jury that if the Grays acting together, made an assault and drew their weapons or did any other act indicating an intention to attack John Yancy, and John Yancy shot and killed Arthur Gray, and Lewis Jenkins shot and killed John Gray, the fact that Lewis Jenkins shot and killed John Gray, would cut no figure in this case, so far as John Yancy's rights are concerned. The court gave a very full and elaborate charge on the subject of self-defense predicated on the facts, and covering, as we believe, every phase of the case made by the facts; and the charge in question was not called for. In the charges given the jury were authorized to acquit appellant, if he killed deceased under circumstances which authorized him to act in self-defense as against one or both of the Grays; and the jury were nowhere authorized to convict appellant for killing John Gray, as he was only on trial for the alleged murder of Arthur Gray.

Appellant insists that the court committed an error in failing to charge on circumstantial evidence. In addition to the confession of appellant made to witness Ray, we have the witness Wash Jenkins testifying for the defendant to the facts of the killing, he being an eye-witness; and we have the testimony of defendant himself, in which he testifies positively that he did the killing. It is only necessary, where the case is one wholly of circumstantial evidence, for the court to charge on this subject. See section 813, subject 2, White's Ann. Code Criminal

Procedure. Confessions alone will take the case out of the rule. White v. State, 32 Texas Crim. Rep., 625; Franks v. State, 45 S. W. Rep., 1013; section 813, subject 2, White's Ann. Code Criminal Procedure.

It is urged that counsel misstated the evidence of one of the witnesses. If it be conceded that this is correct, this would not afford a ground for reversing the case. Counsel might, through inadvertence misstate testimony, or even might do so intentionally. The jury is the ultimate arbiter as to this matter, and unless some injury be shown by such misstatement, it would not be reversible error. Here, the court explains that there was a misstatement as to the testimony of said witness, and it appears that this was corrected.

It is also complained that appellant's counsel during the argument pointed to the widow and children, who were in the court-room, and said, "there is the mob defendant feared as the reason for his remaining all night away from his home and concealed in the crib." The court explains that there was evidence to the effect that appellant did remain in Ray's corn crib the very night of the homicide, alleging that his wife feared a mob might come after him if he remained at home. However, this reference to the widow and children was not called for by this evidence. But no charge was asked with reference to this remark. If it be conceded that this was error, under the circumstances it would not constitute reversible error.

Appellant contends that the court should have given a charge on former provocation, but he fails to suggest any theory of the case that would authorize a charge on this subject. Such a charge could only be called for where the State relied on some former grudge or provocation, and some matter of more recent occurrence had transpired to cut off such former provocation. Here the parties seem to have had an altercation late in the evening before the night of the homicide, which caused the homicide or led up to it. Deceased, during said altercation, made threats to kill appellant that night. The court gave a full charge on this subject, which was all that was called for by the testimony.

Appellant, by his ninth bill of exceptions, complains of the action of the court permitting the State to impeach its own witness Ray. However, the bill does not show the impeachment. It shows that after Ray testified to certain facts, counsel for the State called his attention to his former testimony, made the next day after the homicide in an affidavit before the county attorney, and asked the witness, if the statements differed from the statements made before the jury in the trial. Defendant objected to this question on the ground that the State could not contradict her own witness, unless the witness had deceived the State. The court overruled the objections and permitted witness to answer. But what the answer of the witness was is not disclosed. If we should recur to the statement of facts to help out the bill (which we are not permitted to do), it will be seen that the statement shows the witness was permitted to refresh his memory and it was used as a corrective. There was no error manifest in this action of the court.

The court gave a very elaborate charge, including murder in both degrees, manslaughter and justifiable homicide. Appellant complains of the charge on manslaughter, because he says that the charge required the emotion of defendant's mind to amount to fear of death or serious bodily injury, instead of an emotion which would render him incapable of cool reflection, because said charge was incorrect, confusing, and conflicting with the charge on self-defense, tending to limit the right of self-defense and to confuse the law of manslaughter with the instructions on self-defense. We have examined the court's charge on this subject in connection with the charge on self-defense. We quote that portion of the charge objected to, as follows: after instructing the jury, if they believed defendant and deceased had a casual meeting in the dark, "and it reasonably appeared to defendant from the sudden appearance and meeting with the said Arthur Gray and John Gray, that he (defendant) was in danger of serious bodily harm or death, and defendant was thereby by such danger aroused to terror or resentment or rage or anger sufficient to render his mind incapable of cool reflection, and under the immediate influence of the passion arising in his mind from such danger, and not in defense of himself against a violent attack reasonably producing a rational fear or expectation of death or serious bodily injury, and under such circumstances, shot and killed deceased, then to find him guilty of manslaughter," etc. It occurs to us that this phase of the case was presented by the evidence. If appellant's passion, either terror, resentment or anger, was aroused to such an extent as to render him incapable of cool reflection, by a sudden meeting under the circumstances, including what had occurred the evening before, and there was no hostile act or demonstration authorizing defendant to act in self-defense, then a charge on manslaughter was called for, and it could scarcely be said that appellant's apprehension could relate to anything save a fear of death or serious bodily injury. Indeed, the evidence did not justify any other inference, nor would an apprehension on any other account than that stated by the court, have authorized defendant to act so as to reduce the offense to manslaughter. Williams v. State, 15 Texas Crim. App., 617; Howard v. State, 23 Texas Crim. App., 265. Besides this charge on manslaughter, applicable as we think to the facts proven, the court gave a very clear charge on the subject of self-defense, differentiating appellant's right of self-defense, from his right to reduce the offense to manslaughter. In the charge on manslaughter, it will be noted, the jury were told absolutely that defendant must not have acted in defense of himself; while in the charge on self-defense, the jury were especially instructed that if deceased, or his companion John Gray, made any hostile act or demonstration which caused appellant to believe that his life was in danger, he had a right to slay deceased in his necessary self-defense. It does not occur to us there is any difficulty in these charges, or any reason afforded why the jury could have been confused as between the charge on manslaughter and the charge on self-defense.

We have examined the evidence carefully, and in our opinion it fully sustains the verdict, according to the State's theory, which the jury evidently believed. A verdict of murder in the first degree could have been sustained. It is not necessary here to restate the testimony, but we believe the jury were fully justified in rendering the verdict.

The judgment is affirmed.

*Affirmed.*

### ON REHEARING.

#### May 31, 1905.

HENDERSON, Judge.—Appellant has filed a motion for rehearing. He calls our attention to the fact that this court committed a serious error in misstating the case as to who were engaged in the difficulty, and who were killed. Appellant is entirely correct in this matter, as the opinion in the subsequent portion thereof shows. Arthur Gray and his son John Gray were engaged in the difficulty on the one side, and not Shelly Gray as stated in the original opinion. Arthur and John Gray were both killed. Shelly Gray, another son of deceased, was not present at the homicide.

Appellant also seeks to show that the court is in error as to some of the statements regarding the respective theories in the case; but it does not occur to us, if this be conceded as to some of the details, the court was not entirely correct—that this would make any difference in the disposition of the case. Indeed, we fail to discover any material difference as to the theories presented in the original opinion and those stated in appellant's motion for rehearing. It is true that the Grays, father and son, were armed on the night of the homicide, and that they went to Wash Jenkins' house evidently expecting to find John Yancy, and that they were not on their way to Wash Jenkins' when the homicide occurred, but were returning therefrom. We fail to see that this makes any difference in the discussion of the assignments presented in the case.

Also in the original opinion in stating the theory of appellant we observed that appellant and Lewis Jenkins had a casual meeting with deceased and Shelly Gray. Of course we were in error as to it being Shelly Gray, as John Gray was with deceased. This is shown in subsequent portions of the opinion. But we fail to see why appellant should object to the "casual meeting" on the part of himself and Lewis Jenkins with the Grays.

It is further stated in the original opinion that when appellant and Lewis Jenkins met the Grays they attempted to shoot and kill appellant, and he shot and killed deceased, Arthur Gray and his son, "Shelly," as stated in the original opinion, but in fact John Gray. As we understand the record this was the theory presented by appellant.

We remarked in that connection that appellant also insists there is some testimony showing that Lewis Jenkins might have killed one of the parties. Appellant says this is not correct. It is true that John Yancy, as stated by appellant in his motion, said he killed both Arthur

Gray and his son John. Wash Jenkins, another witness for appellant, states that there were two parties in the fence corner at the time of the homicide, and that immediately after one began firing another fired, and these two parties, or whom he took to be two parties, ran off. This may not be sufficient evidence to show that according to appellant's theory Lewis Jenkins might have been one of the parties firing the shot. This statement may not be accurate as contained in the original opinion. However, it does not occur to us this makes any difference. The fact that he participated in the homicide is abundantly shown by the testimony on the part of the State, and that he fired one of the two shots by which the Grays were killed. So far as a discussion of the case is concerned, we may adopt the theories of the State and the defendant as set out in appellant's motion for rehearing.

It is strongly urged that appellant has shown a case of positive evidence that authorized him to act in self-defense. It may be conceded if we take the testimony of appellant himself and Wash Jenkins, who was indicted for the same offense, that they make a case of self-defense. However, it is not difficult to gather from Wash Jenkins' testimony that he was cognizant that appellant and Lewis Jenkins were lying in wait for the Grays at the point where the homicide occurred. The Grays had been to his house he says, seeking John Yancy, they started away from his house, going, as he says, to John Yancy's house to find him. He accompanied them on some account, and he says that just before they got to where the killing occurred, and just before he discovered those parties in the fence corner, "I felt sorter curious; I suspicioned something, and that it was about time to go back; I was a little afraid to go any farther; I did not know what might happen." Evidently this indicates that he knew something was about to happen. He further says that just when they got to where the parties were, he saw somebody in the fence corner. "I said to Mr. Gray, 'Who is that?' and Gray says, 'I know who it is.' Gray says, 'Is that you, John?' When the person in the fence corner answered, 'Yes.' Then Mr. Gray said, 'God damn you I will get you now,' and about that time the gun fired." This was unquestionably fired by one of the parties in the fence corner, as neither Gray nor his son John fired a shot, though both were armed.

Appellant urgently insists that because he introduced positive testimony of himself and witness Wash Jenkins, which he claims justified them, that the jury could not convict on the circumstantial evidence offered by the State. We do not agree to this contention. We believe that the circumstances offered by the State countervail and overcome the testimony of appellant's witnesses as to what occurred at the time of the homicide. We do not deem it necessary here to collate and set out the testimony in this regard. In our opinion it was amply sufficient. While we have conceded for the sake of argument that the witness Wash Jenkins' testimony suggests justifiable homicide, yet his evi-

dence, as we view it, in effect reinforces the inculpatory circumstances offered by the State.

We do not deem it necessary to rediscuss the assignments of error, which were thoroughly gone into in the original opinion. Nor do we deem it necessary to say more than was stated in the original opinion, that under the circumstaonces the State was not required to put the witness Wash Jenkins on the stand. There being no error shown in the motion for rehearing of a reversible character, the motion is accordingly overruled.

*Overruled.*

Brooks, Judge, absent.