## HILLEY v. STATE. (No. 9457.)

(Court of Criminal Appeals of Texas. June 10, 1925. Rehearing Denied Dec. 22, 1926.)

1. **Criminal law ☞603(7)—Refusal of continuance to refute testimony of witness repudiating former statement held proper, where names and testimony of absent witnesses were not shown.**

Refusing to allow withdrawal of announcement of ready at trial and continue case, on discovery that witness repudiated statement favorable to defendant, *held* proper, where motion for continuance failed to state names of absent witness or nature or materiality of their testimony, merely indicating testimony would contradict that of unfavorable witness and would be of impeaching nature.

2. **Criminal law ☞603(2)—Valid reason must be shown for granting continuance.**

Defendant seeking continuance must show in his application valid reason for its being granted, and mere general statements are insufficient.

3. **Criminal law ☞603(7)—Defendant seeking continuance for absent witnesses must show what he expects to prove.**

Where continuance is sought for absence of witnesses, it is incumbent upon defendant not only to name witnesses, but to show what he expects to prove by them, so as to warrant

court in concluding testimony of such witnesses is material to defense.

**4. Criminal law ⚷➡829(22)—Refusal to give special charge with reference to suspended sentence, in murder prosecution, held not error.**

Refusal of court to give special charge on suspended sentence *held* not error, where charge given on subject was equally favorable to that demanded.

**5. Criminal law ⚷➡695(2)—Permitting character witness' testimony as to what he had heard of accused's violation of law held proper, as against general objection.**

Allowing state to examine defendant's character witness, in murder prosecution, as to what he heard concerning defendant's acts or violations of law *held* not error, where objected to as irrelevant and immaterial.

**6. Witnesses ⚷➡274(2)—State could cross-examine character witness as to overhearing discussion by defendant and others that defendant had bought pistol.**

Allowing cross-examination of defense witness, in murder prosecution, as to his hearing it discussed by defendant and others that defendant had bought pistol to commit homicide *held* not error, such testimony being pertinent to test witness' knowledge of what public generally said concerning defendant's reputation.

**7. Witnesses ⚷➡376—After defendant accused of murder had shown witness was prejudiced, state could, on redirect examination, prove transactions causing animosity towards accused.**

Where, in murder prosecution, defense had proved witness testified for state because of animosity towards defendant, state could, on redirect examination, prove by witness transaction showing defendant's ill will and assault on witness in order to explain animosity of witness.

**8. Criminal law ⚷➡1170½(1)—Testimony of witness, on redirect examination, indicating reason for animosity towards defendant held nonprejudicial.**

Testimony of state's witness, on redirect examination, in murder prosecution, as to transaction causing ill feeling towards defendant *held* nonprejudicial, where such testimony indicated witness was embittered against defendant.

On Motion for Rehearing.

**9. Criminal law ⚷➡598(2)—Defendant who could have discovered repudiation by one witness of former statement before trial was in no better position to demand continuance on making discovery during trial (Code Cr. Proc. 1925, art. 551).**

Where witness repudiated statement favorable to defendant, defendant, who could have discovered situation before trial by calling witnesses, but who by failure to do so did not make discovery till during trial, had no greater right to continuance, under Code Cr. Proc. 1925, art. 551, than if surprise had occurred before trial.

**10. Criminal law ⚷➡598(2)—Where matter relied on as surprise could have been known before trial, occurrence after trial gave no additional ground for continuance (Code Cr. Proc. 1925, art. 551).**

Where matter relied on as surprise during trial, under Code Cr. Proc. 1925, art. 551, was in existence before trial and, if known to accused before trial, would not have availed to secure continuance, occurrence at trial creates no additional right.

**11. Criminal law ⚷➡603—Accused, surprised by repudiation by witness of former statement which could have been discovered before trial, could obtain continuance only by proving materiality of absent witness' testimony (Code Cr. Proc. 1925, art. 551).**

Though witness' repudiation of former statement was not discovered until after commencement of trial, accused, who could have discovered repudiation before trial, was required, on application for continuance, to offer proof that continuance would result in procuring additional facts meeting and overcoming those which caused surprise, in spite of Code Cr. Proc. 1925, art. 551.

**12. Criminal law ⚷➡695(6)—Overruling general objection to testimony mostly admissible held not error, where inadmissible part was not pointed out.**

Where most of testimony of witness objected to was admissible and bill presented only general objection which included matters admissible, as well as one inadmissible expression, overruling general objection *held* not error.

Morrow, P. J., dissenting on motion for rehearing.

Commissioners' Decision.

Appeal from District Court, Fannin County; F. E. Wilcox, Judge.

T. H. Hilley was convicted of murder, and he appeals. Affirmed.

*Cunningham & Lipscomb,* of Bonham, for appellant.

Wyatt Baldwin, Dist. Atty., of Paris, Wheeler & Leslie, of Bonham, Tom Garrard, State's Atty., of Lubbock, and Grover C. Morris, Asst. State's Atty., of Devine, for the State.

BERRY, J. Appellant was convicted in the district court of Fannin county for the offense of murder, and his punishment assessed at confinement in the penitentiary for a term of 25 years.

[1] Appellant complains at the court's action in refusing to allow him to withdraw his announcement of ready and postpone or continue the case when it developed on the trial that the witness Carl Turrentine had repudiated a statement formerly made by the said witness, which statement was favorable to the appellant, and was prepared on the trial of this case to give testimony damaging to appellant's defense. Without going into a lengthy discussion of this matter, it is suf-

---

ficient to say that we have carefully considered it and have reached the conclusion that the court's action with reference thereto was correct.

[2, 3] In presenting an application for continuance or postponement, it is incumbent upon the party so doing to show in said application a valid reason why same should be granted, and mere general statements are not sufficient to meet this requirement. The appellant in this case merely averred that, if he had a reasonable time, he could and would procure evidence contradicting the evidence of the witness Turrentine given at the trial of this cause; that such evidence could be procured among neighbors residing in Fannin county, Tex., at or near Bonham; that such evidence could be procured, if defendant had time, in Harris county, Tex., from among the associates of defendant; and that, if defendant had time and opportunity, he could procure from Harris and Brazoria counties evidence establishing that said witness has a bad reputation for truth and veracity. We think it without dispute that this showing is wholly insufficient. When an appellant seeks to continue a case for absent witnesses, as a general rule, it is incumbent upon him to not only name the witnesses, but to show what he expects to prove by each of said witnesses, and also to show in said application sufficient facts to warrant the court in concluding that the testimony of the absent witnesses is material to the appellant's defense. We think none of these requirements was met in this case, and we overrule appellant's complaint with reference thereto.

[4] By bill of exceptions No. 2, appellant complains at the court's action in refusing to give his special charge with reference to the suspended sentence. The court gave a correct charge on the subject of suspended sentence, and presented, in the last section of paragraph 18, in language equally as favorable as that contained in the special charge, the very question sought to be presented thereby.

[5] The complaint made by bill of exception No. 4 to the cross-examination of the character witness is not sufficient to show error. It is permissible for the state to cross-examine a character witness as to what he had heard concerning acts or violations of law or other matters of this character committed by the party for whom he is testifying, and the bill merely showing that it was objected to as irrelevant and immaterial, we cannot hold that the objection should have been sustained.

[6] Neither is there merit in appellant's bill No. 5, which complains of the court's action in permitting his character witness Jones to be asked if he had heard it discussed by the defendant and others that the defendant had bought a pistol to kill a man with. We think this was relevant and pertinent testimony, testing the witness' knowledge of what the public generally said concerning the reputation of the defendant.

[7] By bill of exception No. 9, appellant complains at the court's action in permitting the state to prove by the witness Turrentine a certain transaction had between the witness and the appellant, which transaction showed ill will and technical assault on the witness by the appellant. This testimony was offered, on redirect examination, by the state after the defendant had asked the witness and proved by him he "had it in" for the defendant, and was testifying as he had, in order to get even with him and in order to get revenge upon the defendant. We are disposed to think that the witness had the right to explain the reasons that actuated him in testifying against the defendant. The appellant had shown by this witness that he had enmity and ill will against defendant and that he sought revenge upon the defendant, and we think that, where the witness' testimony was attacked in this manner, it was proper for him to make an explanation as to his feeling toward the party on trial, but, of course, details of extraneous matters should not have been admitted.

[8] We are persuaded, however, that this testimony, instead of being hurtful to the defendant, was properly beneficial to him. If it had any effect one way or the other, it certainly had a tendency to convince the jury that the witness was so embittered against the appellant as to be likely to cause him to testify falsely against him, and the testimony of this witness on this matter, we think, did not put the appellant in a bad light before the jury, but, on the contrary, we think that the testimony tended to show defendant's act as creditable to him under the circumstances detailed.

We have carefully examined each of appellant's bills of exceptions and have reached the conclusion that there is no error shown in any of them. It is therefore our opinion that the judgment should 'in all things be affirmed.

PER CURIAM. The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the court.

On Motion for Rehearing.

LATTIMORE, J. [9] Appellant reargues the proposition of injurious error based on the refusal of his application for continuance or postponement made after the trial began, same being governed by article 551, 1925 C. C. P., which provides that, when it is made to appear to the satisfaction of the trial court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had, a postponement or

continuance may be granted. We do not understand this article to change the general rules governing continuances except as to things occurring unforeseen during a trial.

[10, 11] By this we mean that if the matter relied on as of surprise be one which was in existence before the trial, and, if known to the accused before the trial began, would not have availed to secure a continuance, it would derive no sanctity and create no peculiar right of continuance by virtue of its occurrence or discovery during such trial. As applied to the facts in the case before us, we are of opinion that, by reason of this statute, appellant has no vantage ground greater than would have been his had witness Turrentine come in unexpectedly on call of all the witnesses before the trial began, and it had been then ascertained by appellant's counsel that he would testify to facts at variance with those set out in the sworn statement in their possession. The surprise would have been the same in either case, and the rights of appellant to a continuance would appear to be the same. In either case, after pleading the surprise, it would be incumbent on appellant to make such application as to absent witnesses, the diligence, and the facts, which, being addressed to the sound discretion of the trial court, would reasonably convince him that a continuance would result in procuring some definite favorable facts meeting and overcoming those which cause the surprise.

This record shows that the purpose of the requested continuance was to secure witnesses, none of whose names were known or attempted to be stated, nor their residences other than that the witnesses could be found in Fannin, Brazoria, and Harris counties. The expected testimony from these unknown witnesses was stated to be that Turrentine had a bad reputation for truth and veracity in said counties. Mr. Branch, in section 324 of his Annotated P. C., cites authorities supporting the proposition that a continuance will ordinarily be refused, if sought to obtain only impeaching testimony.

We have here then an application which not only fails to name the absent witnesses whom appellant hopes to find, but which sets out as the expected facts only the proposition that they would impeach Turrentine by testifying to his bad reputation. We think the original opinion on this point was correct.

[12] The rule is so well settled as to need no discussion that a character witness on cross-examination may be asked if he has not heard from other people statements as to specific acts and conduct of the party whose reputation is in issue, the admission of having heard which might weaken the force of the testimony of such character witness. Such we think to be the effect of the holdings in the list of authorities filed by appellant in his supplemental brief. We have carefully examined the testimony of defense witness J. E. Jones and find therein one expression which, if separately objected to, might have been held inadmissible, but the most of the testimony of said witness which was objected to is admissible, and the bill presenting only a general objection and including matters admissible, as well as the specific matter mentioned by us as being questionable, we think the learned trial judge committed no error in overruling such general objection.

Bill of exceptions No. 9 complains of the fact that the witness Turrentine was permitted to explain a statement made by him in response to a question asked him on cross-examination by appellant's counsel, which statement was of a nature that reflected upon him as a witness. We observe that Mr. Branch, in section 94 of his Annotated P. C., sets out at length the right of a witness to explain any matter brought out by the adverse party which reflects upon him, and the authorities cited in support of section 92 of said work uphold the proposition that the explanatory testimony is not restricted to a particular time.

Being unable to agree with appellant's counsel, though we have found his propositions exceedingly interesting and have been led to give the matter considerable study, we are of opinion that the motion for rehearing should be and the same is hereby overruled.

HAWKINS, J. (concurring on motion for rehearing). I concur with my brother LATTIMORE in his view that no reversible error was committed by the trial judge in refusing to grant appellant's motion to withdraw his announcement and continue the case on account of surprise at the testimony of the witness Turrentine. The case had been continued one time by appellant on account of the absence of this witness. On additional process to Brazoria county by appellant, he had not been served. On the 14th day of February the district attorney had process reissued for all witnesses, both for the state and accused, and process for Turrentine was issued to Harris county. It was served on the 16th day of February, at which time the witness made affidavit before a notary public in Harris county that he had no funds to enable him to respond to the process. The sheriff's return shows he furnished the witness $13.20 to pay his expenses to court in obedience to the subpœna. The process with the return thereon was filed in court on the 18th day of February. Counsel for appellant seems to have had no information of this process. When the case was called for trial, Turrentine's name was not called as a witness by either side, but announcement was made by appellant without calling his witnesses. An examination at that time of the process on file would have

disclosed that the witness had been served, money advanced, and that he might be expected to be present. In appellant's motion to withdraw his announcement and continue he avers that the state's attorneys and officers conspired to conceal the presence of said witness for the purpose of springing a surprise on appellant. Upon that point the record shows that S. F. Leslie, who had been employed to aid in the prosecution, knew that process for this witness had been issued to Brazoria county at the instance of appellant, but had no knowledge of any additional process and had never seen the witness Turrentine. On the evening of the 18th of February, Leslie went to his farm. If this trip had anything to do with the present case or with the witness, the record does not disclose it. While at his farm he was informed that Turrentine was at a Mr. England's. Leslie went there, talked with the witness, and then learned what the witness would testify. The witness wanted to go to Mr. Eldridge's who lived on Leslie's place, as he was a friend of Eldridge, and Leslie took the witness there at the latter's request, and told Eldridge to bring the witness to court. Leslie says that Eldridge was at work on the morning the case went to trial and that he (Leslie) told the sheriff at noon to get the witness in, but, as the sheriff did not do so, that evening after court adjourned, he (Leslie) took the district attorney and went out and brought the witness to court. The sheriff makes affidavit that when the case was called for trial appellant's attorney did not call the names of his witnesses; if he had done so, or otherwise made any inquiry, he would have informed him Turrentine would be present as a witness; that the witness was about a mile south of Bonham at Mr. Eldridge's; that at noon, before the jury was completed, the state's attorney asked him to go and get Turrentine, and that he would have done so and would have had him present when the other witnesses were sworn, but thought it would take all day to get the jury; and for that reason he did not go after the witness or send for him at that time. Unless the failure of the officer and of the state's attorney to apprise counsel for appellant that Turrentine was available may be regarded as deception practiced on appellant, it is doubtful if the facts appearing would authorize such conclusion.

After Turrentine had testified favorably to the state and contrary to the statement which had been theretofore made by him, appellant filed his motion to withdraw his announcement. After setting out the facts stated by said witness in the voluntary statement originally made by him, and that his evidence given upon the trial was contradictory thereto and antagonistic to appellant, the reasons given for requesting a withdrawal of his announcement follows:

289 S.W.—5

"That this defendant is and was surprised at the testimony given by such witness on this trial, and that if said defendant had a reasonable time, he could and would procure evidence contradicting the evidence of said Carl Turrentine, given at the trial of said cause; that such evidence could be procured among neighbors of defendant residing in Fannin county, Tex., about 7 miles from Bonham; that said testimony could be procured, if defendant had time, in Harris county, Tex., from among the associates of defendant; that if defendant had time and opportunity, he could procure from Harris and Brazoria counties evidence establishing that said witness had a bad reputation for truth and veracity; that the defendant, if he had time, could establish by witnesses residing in Fannin county that the said witness had a bad reputation for truth and veracity."

It will be observed that the name of no witness is given and no fact or circumstance is stated which would advise the court with any degree of certainty what appellant could prove or what benefit would accrue to appellant by a continuance of the case. Appellant had expected to use the witness Turrentine and had doubtless made no inquiry with reference to supporting or impeaching him up to the time he testified in the case. It seems apparent that the broad statement made in the application to withdraw the announcement was only a suggestion that, if appellant was given time, he might be able to find somebody by whom he could contradict the witness, or who would testify that his reputation for truth and veracity was bad. It evidently was not the purpose of article 551, C. C. P. (permitting the withdrawal of announcement and postponement or continuance of cases) to put accused in a better position than he would have been, had he known what a witness would testify before the announcement of "ready." If appellant had ascertained beforehand that Turrentine would be present and would give the testimony which he did relate before the jury, and had filed an application for a continuance containing the indefinite statements and with no witnesses named, as appears in his motion to withdraw, and then for impeachment purposes only, the court's action in refusing such application could not have been held erroneous.

The true rule, we think, is that laid down by this court in Marta et al. v. State, 81 Tex. Cr. R. 135, 193 S. W. 323, as follows:

"When surprise at the testimony of a witness is relied on as a ground for continuance, the court must be put in possession of some fact or circumstance, where by granting time the person will be enabled to meet, or, at least, minimize the force of the testimony. As no such allegations were contained in the motion made, there was no error in overruling the application. Davis v. State, 60 Tex. Crim. Rep. 620 [132 S. W. 932]; Loveless v. State, 40 Tex. Crim. Rep. 221 [49 S. W. 892]; [Id.] 44 S. W. Rep. 508; Williams v. State, 48 Tex. Crim. Rep. 325 [87 S. W. 1155]."

In addition to the cases cited.in the foregoing quotation, see Powers v. State, 83 Tex. Cr. R. 462, 204 S. W. 325.

That this is the correct rule we think is demonstrated by the opinion in Hodde v. State, 8 Tex. App. 382. In that case the witness Shelin had. attempted to fix a criminative fact upon appellant by testifying that he had seen ·him at "Sommers gin" at a certain time. The defense immediately sent an officer with process for Sommers, the proprietor of the gin, and asked for a postponement of the case until the witness could arrive. This was declined and the court held it error. Here the witness was named, process was dispatched for him, and, upon motion for new trial, an affidavit from the witness was attached showing that he would have given evidence combating that which had been received from Shelin. To the same effect is Withers v. State, 23 Tex. App. 396, 5 S. W. 121. The prosecuting witness (one Burris) had testified at a former trial of the case locating the scene of the offense (which was a charge of exhibiting a gaming table) "in a room over Paschall's saloon" in the town of Denton. Upon the second trial, he located the place of the offense "in Wither's saloon on the west side of the public square." Counsel for appellant claimed surprise and asked permission to withdraw his announcement and that the case be postponed to enable him to get the testimony of four named witnesses, residents of the county, by whom he asserted he could prove that, at the time and place testified to by the witness Burris, defendant did not exhibit a gaming table, but only engaged in a game of poker. This court held that, under those circumstances, the court was in error in refusing appellant's application. It will be seen that in both the Hodde and Withers Cases the names of the witnesses were given by whom appellant contended he could show that the testimony at which he claimed surprise could be shown to be false.

In the present instance, the names of no witnesses were given, and no facts or circumstances stated which enabled the trial court, or which enables this court, to say with any assurance that appellant would be in a position upon another trial to produce testimony to break the force of that given by Turrentine. To decide that the showing was sufficient to have justified the withdrawal of announcement and continuance of the case would be equivalent to holding that, on a mere surmise that appellant might possibly find some impeaching and contradictory testimony, the trial should be halted and a continuance granted.

I believe this would be going further than the statute contemplated, or than any authority which has come to my attention in reviewing this question would authorize.

I therefore concur in the opinion overruling appellant's motion for rehearing.

MORROW, P. J. (dissenting on motion for rehearing). Appellant shot and killed Omer Rhodes on the 7th day of August, 1924. On the trial, which took place on the 19th of February, 1925, the wife of the deceased testified that she was an eyewitness and gave evidence to the effect that the homicide was without justification or excuse. Appellant testified to facts justifying the homicide. One Turrentine testified upon the. trial that he was an eyewitness and gave testimony conflicting with that of the appellant and coinciding with that of the state's witness mentioned.

After announcing ready for trial, appellant sought to withdraw his announcement and to obtain a postponement. At a former term of court appellant had secured a continuance on account of the absence of Turrentine. After the homicide, ·Turrentine had gone to another county in the state to which the appellant had caused the issuance of a subpœna which had not been served. It seems that the court, at the time the continuance was granted, deemed the diligence to secure the witness sufficient and found his testimony material. Later efforts made by the appellant and his counsel to learn the whereabouts of the witness had been futile.

According to the averments in the motion, the witnesses for both the state and the defendant were called to the bar and sworn; that Turrentine was not present; that no motion to continue because of his absence was made for the reason that, the former continuance having failed to secure the service of subpœna, it was deemed useless to present an application.

It is averred in the motion that, soon after the homicide, Turrentine had voluntarily made an affidavit to facts corroborating the appellant's theory and tending to exculpate him; that after the trial had progressed until late in the afternoon of the day upon which it began, appellant's counsel learned in a conversation with one of the counsel for the state, ˚employed by the private prosecution, that Turrentine had returned to the county and would be present at court. Counsel for the appellant was not informed and did not know that Turrentine would give testimony prejudicial to the appellant. A night session was held and the witness Turrentine appeared at that time, and counsel learned from him for the first time that he had made an affidavit repudiating the one he had previously made, and that he would swear to facts . contrary to his former affidavit, prejudicial to the appellant and favorable to the state. Appellant at once gave notice that he desired to withdraw his announcement of ready for trial and moved for a continuance or postponement. The court declined to stay the proceedings pending the preparation and presentation of such motion, the character of which was communicated to him, but said that he would hear it on the following morning. This procedure was unsuccessfully op-

posed by the appellant, and the witness Turrentine was called by the state and testified adversely to the appellant in the particulars above indicated. On the following morning appellant presented his motion as above mentioned, setting up the facts detailed above, and, in addition thereto, averred that the witness Turrentine reached Fannin county on the 18th day of February, 1925, his presence being unknown to the appellant or his counsel, but known to the state's attorneys.

It is further averred that the witness was concealed upon the farm of one of the attorneys for the private prosecution, and the knowledge of his presence and the change of testimony was withheld from the appellant and his counsel; that, in ignorance of his presence or his change of testimony, appellant made his announcement of ready for trial upon the assumption that the witnesses called and sworn constituted those who would be used upon the trial; that he was impressed with this assumption by the fact that the witnesses, at the instance of the state, had been called, sworn, and put under the rule.

The motion charged that the withholding of the information that the witness Turrentine would be produced and that he had changed his testimony was purposely done to mislead the appellant and his counsel and induce them to make the announcement of ready to go into the trial. It is also averred that the production of said witness and the change of his testimony were a surprise to the appellant and his counsel. It is further averred that, while the change of the testimony of the witness Turrentine would have been available to the state in opening its case, they withheld it for rebuttal and introduced it after appellant had closed his case, thus emphasizing the surprise and the result of the injury.

In his motion the appellant averred that, if given reasonable time, he could and would produce evidence contradicting that given by Carl Turrentine at the trial; that such evidence could be procured among the neighbors residing in Fannin county, about 7 miles from Bonham; that similar testimony could also be procured in Harris county; and that, if given time and opportunity, he could procure evidence from Harris and Brazoria counties establishing that the witness Turrentine had a bad general reputation for truth and veracity; that he would also bring similar testimony touching the reputation of Turrentine from Fannin county; that all capable members of his family and his counsel had been present during the trial; and that there had been no time or opportunity for a search for the evidence mentioned during the trial after the necessity for it became known to the appellant.

The motion, by written pleading, was controverted by the state upon the averment that process had been issued, served, and returned upon the witness on the 18th day of February; that the appellant made his announcement of ready for trial without calling the witness and without examining the process; that about an hour after the introduction of the testimony began, appellant's counsel became aware that Turrentine would be used as a witness for the state; and that before the close of the trial he was sworn as a witness and placed under the rule.

On the trial, one of appellant's attorneys testified in accord with the averments in the motion. The attorney employed by the private prosecution also gave evidence. From the testimony of the latter, it appears that he had made some efforts to locate Turrentine, but did not know of additional process; that on the day before the trial he learned of the whereabouts of the witness and talked to him, and learned that his testimony would be in accord with that which was subsequently given by the witness on the trial.

Turrentine testified on the trial that, responding to the subpoena served upon him in Harris county, he arrived on the 18th of February. He said he wanted to get even with the appellant because of threats; that on his arrival he went to the home of one England, where he later saw the attorney for the private prosecution, at whose request the witness went to the farmhouse of the attorney, and from there to the home of Eldridge in company with the attorney. According to his testimony, Turrentine was to stay with Eldridge, who was an acquaintance; that he did remain until the evening of the day on which the trial took place, at which time he was informed by the attorney mentioned that he would be wanted at court at 7 o'clock. None of the attorneys other than the one mentioned above testified concerning Turrentine.

Article 551, C. C. P. 1925, reads thus:

"A continuance or postponement may be granted on the application of the state or defendant after the trial has begun, when it is made to appear to the satisfaction of the court that by some unexpected occurrence since the trial began, which no reasonable diligence could have anticipated, the applicant is so taken by surprise that a fair trial cannot be had."

Our statute on the subject of surprise seems, in substance, to embrace the practice applied in most of the American jurisdictions. See Ency. of Law & Proc. vol. 9, p. 189. The fact cases are meager. However, there are some laying down controlling principles, and some are upon illustrative facts.

Discussing the matter, Judge Hurt, in Lindley v. State, 11 Tex. App. 285, used the following language:

"We will take this occasion, however, to state that it is the duty of those representing the state to treat the accused with 'fairness, and to inflict injury at the expense of the prisoner is no part of the purpose of the law.' Curtis v. State, 6 Cold. [Tenn.] 9. The state cannot afford to engage in the work of chicanery and fraud, especially to convict of felony one of her citizens. When she demands the life, liber-

ty, or property of her citizens, her procedure should be bold, liberal, and upon high grounds."

In the opinion, citation is made to the case of March v. State, 44 Tex. 64, wherein similar expressions are found concerning artifice in inducing the accused to go to trial on the impression that an important state witness was absent.

In Withers v. State, 23 Tex. App. 396, 5 S. W. 121, a reversal was ordered because of surprise from a change of testimony given by the prosecuting witness on the present trial from that of a previous trial.

In the Hendrick Case, 47 Tex. Cr. R. 371, 83 S. W. 711, counsel for the state stated to counsel for the accused that no more witnesses to sustain a certain fact in issue would be introduced by him. Acting upon this announcement, certain witnesses for the accused were dismissed. Subsequently, state's counsel put upon the stand, contrary to his announcement, a witness to prove the fact in question. This was regarded as a surprise. The case was reversed upon other grounds, but in the course of the opinion the court said:

"This character of practice should not be tolerated by the court; and it may not be necessary, as the case will be reversed on other grounds, to decide whether or not appellant has placed himself in the attitude for reversal upon this ground, because no application for continuance was made at this point. Matters of this sort have been condemned by the appellate courts of this state. March v. State, 44 Tex. 64; Eldridge v. State, 12 Tex. App. 208; Lindley v. State, 11 Tex. App. 283."

In Hodde's Case, 8 Tex. App. 383, a reversal was ordered because of the refusal of the court to delay the proceedings to give the appellant an opportunity to secure the testimony of a witness to contradict that of a state's witness which surprised the accused. Other illustrative cases are collated in the notes in Ency. of Pleading & Practice, vol. 4, p. 863, par. 15. See, also, Vernon's Tex. C. C. P. 1925, vol. 1, p. 472.

It is the opinion of the writer that the averments in the motion, which were not controverted, were sufficient to entitle the appellant to withdraw his announcement of ready for trial and to postpone the hearing for the purpose set out in the motion. That by the procedure set out the appellant and his counsel were surprised by the unexpected occurrence, after the trial began, seems to the writer not open to question. It appears likewise mani-

fest that by no reasonable diligence could the surprise have been averted. For the purpose of the motion, it is conceded that the witness Turrentine was an eyewitness to the homicide; that immediately after the homicide he signed an affidavit, the effect of which was to put the appellant in the right; that he left the county, and that subpœna was issued for him; that on the eve of the trial he gave testimony refuting that formerly made and putting the appellant in the wrong; that neither the appellant nor his counsel know of the witness' return or his change of testimony at the time the announcement of ready was made; that, upon learning the facts of his change of testimony, they promptly sought to withdraw the announcement.

According to the averments in the motion, all reasonable efforts were made subsequent to the failure to secure service to ascertain his whereabouts. He arrived some time before the trial began. This was known to state's counsel to whom he had delivered the information changing his former sworn statement. Appellant, with knowledge of state's counsel, went to trial in ignorance of the presence of the witness or the change of the testimony. From the averment in the motion, it also appears that by postponement he would be able to contradict the witness and impeach his reputation. The article in question (551, supra) is not controlled by the same rules that apply to an application for a continuance made before announcement. The record in the present case shows that the surprise came to the appellant while he and his family and his counsel were engaged in the trial. The court declined to suspend the operations, but proceeded into the night. The witness Turrentine was not called to testify until after the defendant had closed his testimony. To demand the same precision with reference to the names, residences, and testimony of witnesses by whom such an emergency could be met, under such circumstances, in the opinion of the writer, would be foreign to the letter and spirit of the statute upon which the appellant relies, and in which it is said:

"A postponement may be had when the surprise is such that a fair trial cannot be had."

Believing that the circumstances before the trial court were such as should have resulted in granting the motion to postpone, the writer feels constrained to dissent from the contrary decision.