## N. E. PERKINS v. THE STATE.

No. 14834. Delivered December 9, 1931.
Rehearing Denied February 24, 1932.
Application for Leave to File Second Petition for Rehearing Denied March 16, 1932.

The opinion states the case.

*O. M. Lord* and *D. E. O'Fiel,* both of Beaumont, for appellant.

On the proposition as to appellant's right to new trial, based upon the fact that it was discovered by him a prejudiced juror sat upon the case, cited: Henrie v. State, 41 Texas, 573; Long v. State, 10 Texas Civ. App., 198; Sewell v. State, 15 Texas Civ. App., 62; Graham v. State, 28 Texas Civ. App., 582, 13 S. W., 1010; Washaburn v. State, 20 S. W., 715; Long v. State, 22 S. W., 409; McNeal v. State, 274 S. W., 981; McWilliams v. State, 22 S. W., 970; Hughes v. State, 60 S. W., 563; Slack v. State, 149 S. W., 107; Robins v. State, 155 S. W., 936; Harris v. State, 161 S. W., 125; Haggard v. State, 178 S. W., 328.

On the proposition, based upon the fact that the jury discussed the conviction of appellant and the penalty assessed at the former trial, cited: Casey v. State, 102 S. W., 725; Hughes v. State, 70 S. W., 746; Taylor v. State, 299 S. W., 402; Darter v. State, 44 S. W., 850; Hardiman v. State, 53 S. W, 121; Blocker v. State, 61 S. W., 391; Hefner v. State, 71 S. W., 964; Horn v. State, 97 S. W., 822; Lancaster v. State, 65 S. W., 373; Mitchell v. State, 36 S. W., 456; Fabro v. State, 59 S. W., 886.

On the proposition, based upon the fact that one of the jurors was related to the deceased, cited: Page v. State, 3 S. W., 745; Powers v. State, 11 S. W., 646; Stringfellow v. State, 61 S. W., 719.

On the right to postpone or continue, based upon the fact of the unexpected illness of appellant's wife during the trial, cited: Adams v. State, 19 Appeals, page 1; McDow v. State, 10 Appeals, 98; McKee v. State, 34 S. W. (2d) 592.

On the proposition based upon the failure to charge as to appellant's right to continue to shoot until the danger had ceased, cited: Smith v. State, 123 S. W., 701; Best v. State, 135 S. W., 582; Swaine v. State, 86 S. W., 335; Foster v. State, 148 S. W., 583.

*Holis M. Kinard,* County Attorney, of Orange, and *Lloyd W. Davidson,* State's Attorney, of Austin, for the State.

As to the insufficiency of appellant's motion to postpone or continue, cited: Branch's Ann. Penal Code, p. 195, sec. 340; Sweeney v. State, 59 Texas Crim. Rep., 372, 128 S. W., 390; Branch's Ann. Penal Code, p. 194, sec. 337.

On the definition of "malice aforethought," cited Davis v. State, 10 S. W. (2d) 116; Guajardo v. State, 24 S. W. (2d) 56.

On the proposition that if the juror was accepted without inquiring in regard to his relationship to the parties, appellant will not be heard to complain, cited Branch's Ann. P. C., sec. 545; Templeton v. State, 57 S. W., 832.

The disposition of the question by the trial court of disqualification of juror will be sustained unless clearly wrong, cited: Branch's Ann. P. C., sec. 565, at bottom of page 288; Branch's Ann. P. C., sec. 570.

On the question that the granting of a new trial for misconduct of the jury is largely in the discretion of the trial court, cited: Johnson v. State, 40 S. W. (2d) 111.

On the question of the right of the state to reproduce testimony of a witness given on a former trial, cited: C. C. P., arts. 749 and 750; Young v. State, 199 S. W., 479; Scruggs v. State, 34 S. W., 950; Yancy v. State, 29 S. W. (2d) 782; Garner v. State, 271 S. W., 92; Serna v. State, 7 S. W. (2d) 543; Fisher v. State, 1 S. W. (2d) 318; Stovall v. State, 283 S. W., 850.

On the proposition that no error was committed in the court's failure to charge the law of threats, cited: Branch's Ann. P. C., sec. 2075; Jernigan v. State, 17 S. W. (2d) 830.

On the proposition that complaints set out in motion for new trial cannot take the place of proper bills of exception, cited: Davis v. State, 10 S. W. (2d) 116; Jones v. State, 9 S. W. (2d) 347; Woods v. State, 21 S. W. (2d) 669; Robinson v. State, 17 S. W. (2d) 462.

On the proposition that the charge on self-defense protected appellant's rights from every angle, cited: Davis v. State, 10 S. W. (2d) 116; Perkins v. State, 8 S. W. (2d) 122; Gatlin v. State, 20 S. W. (2d) 431; Johnson v. State, 40 S. W. (2d) 111.

On the proposition that the court is not required to select certain facts and name them to the jury and tell them that if such facts were true they could not convict appellant, cited: Dunne v. State, 263 S. W., 608; Victery v. State, 29 S. W. (2d) 787.

Refusing requested charge fully covered in court's main charge, cited: Daigle v. State, 17 S. W. (2d) 61; Lewis v. State, 1 S. W. (2d) 298; Williams v. State, 34 S. W. (2d) 886; Harris v. State, 12 S. W. (2d) 211.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, confinement in the penitentiary for life.

This is the second appeal of this case. Perkins v. State, 117 Texas Crim. Rep., 415, 37 S. W. (2d) 163.

Deceased, W. C. White, was an officer of the police force of the city of Orange, his hours of service being from 5 o'clock p. m. until 5 o'clock a. m. On the night of the homicide Leonard Carr, a service car driver, and deceased met at a cafe shortly after midnight. Deceased entered Carr's automobile and the parties drove about the city of Orange. As they were driving down the street on which appellant's residence was situated, Carr noticed lights in appellant's house. Deceased stopped the automobile. According to Carr's testimony, he heard loud talking in appellant's house. Deceased and Carr went to appellant's door and knocked. Appellant's wife came to the door and admitted them. Appellant was in bed when the parties entered his room. Appellant's manner was friendly. He requested deceased to give him a cigarette, and deceased gave him the last cigarette he had in his package. According to the testimony of the witness Carr, after appellant had taken deceased's last cigarette, he (appellant) requested Carr to go and get some more cigarettes. Carr offered some objection, but appellant insisted that he go. Deceased then gave Carr a dollar and directed him to go and get the cigarettes as requested by appellant. Carr left the house and drove twelve blocks away, being gone about fifteen minutes. He shortly returned with two packages of cigarettes. Upon approaching the door, appellant met him and took one of the packages of cigarettes, Carr keeping the other package. At this time appellant told Carr that he had killed deceased, and requested him to summon the sheriff. Looking into the house, Carr saw deceased lying on the floor in the kitchen. Pursuant to appellant's request, Carr summoned the sheriff, who came to the house in about ten minutes. The constable accompanying the sheriff found a package of cigarettes under appellant's bed and one package in the bath robe appellant was wearing. The witness Carr had given appellant only one package of cigarettes. An examination of the premises disclosed three bullet holes in the floor of appellant's bed room in close proximity to each other. There was a rug over these holes. In deceased's revolver there were found three discharged shells. It appeared that the bullets making the holes in the floor had ranged downward. Deceased was lying in the kitchen on his face. The physician who examined the body testified to having found two wounds thereon. One of the wounds was caused by a bullet entering the front near the collar bone and ranging downward and backward to about the sixth or seventh rib. The physician testified that he could not say whether the other wound entered the back or the front, but that the hole in the back was slightly smaller than the one in front.

Appellant testified, in substance, as follows: He and deceased had

been on friendly terms prior to the homicide. Deceased had visited his house on a number of occasions for two or three years, usually coming at night. On the night of the homicide deceased and Leonard Carr came into his bed room and he invited them to sit down, and deceased sat down on the bed. Deceased asked him for a drink of whisky, and he gave him and Carr a drink out of a bottle he had near his bed. He (appellant) asked deceased for a cigarette, and deceased having given him his last cigarette, suggested that Carr go for some more cigarettes. He (appellant) told deceased that it was unnecessary, as he could telephone and have the cigarettes delivered. Deceased replied that he would send Carr, and gave Carr a dollar, with directions to get some cigarettes. Carr having left the house, he (appellant) and deceased remained in the bed room. His (appellant's) wife was in the dining room. Deceased took another drink of the whisky, practically exhausting the contents of the bottle. Deceased asked him for some more whisky, and he told him he did not have it. Deceased then cursed him, slapped him in the face, and told him to get out of bed, as he was going to kill him. Deceased immediately pulled his pistol and hit at him as he got out of bed. They engaged in a struggle, he holding deceased's arm. Deceased was trying to shoot him with the pistol. As they went through the door between the bed room and the kitchen, deceased's pistol was discharged three times. He (appellant) did not know where the bullets struck. After deceased's pistol had been discharged, he pushed deceased against the kitchen sink and ran into a bed room adjoining the room in which he and deceased had begun their difficulty. Securing his pistol from his wife's dresser, he returned as deceased came toward him. Deceased had his pistol in his hand, saying: "I am going to kill you, you s—of a b—." Believing that deceased was going to kill him, he fired two shots at deceased in rapid succession. Deceased turned and walked toward the kitchen and fell to the floor on his face. His (appellant's) wife left the house when the shooting first started, and he did not see her again that night. He did not shoot deceased in the bank. Deceased was intoxicated at the time he came to the house.

In rebuttal, witnesses for the state testified that they saw deceased shortly before the time he went to appellant's house, and that he was not under the influence of intoxicating liquor. A negro woman who lived a short distance from appellant testified for the state that she heard some shots on the occasion of the homicide. She said she first heard two shots in close succession, and that in a few minutes she heard three shots in rapid succession. Police officers testified that an examination of deceased's uniform disclosed that one of the bullets had entered the back, and made its exit on the front of the body.

It is apparent from the testimony coming from the state's witnesses that it was the state's theory that appellan requested Carr to go for

cigarettes in order that he might have the opportunity to kill deceased. Moreover, it was the state's theory that the range of the wounds showed that appellant first shot deceased in the back and then shot him a second time as he was falling or in a reclining position. Again, the state contended that appellant took deceased's gun and fired three shots through the floor in order to give the appearance of an attack upon him by the deceased. We are unable to say that the testimony is insufficient to support the theory to which reference has been made. The opinion is expressed that the jury were warranted in rejecting appellant's version of the transaction.

The case was called for trial on the 15th day of June, 1931. Appellant's wife was under indictment charging her with having killed deceased. Upon a motion to sever, in which request was made that appellant's wife be tried first, the district attorney dismissed the indictment against the wife. Appellant's wife had not been subpoenaed as a witness in the case, but was present in court when appellant announced ready for trial. The trial proceeded until June 18th, at which time it was discovered that appellant's wife had become ill and was confined to her bed, and that she was unable to appear and testify. Appellant presented a written motion in which he requested the court that he be permitted to withdraw his announcement of ready, and the case be continued on account of the illness of his wife. The motion having been overruled, appellant predicated his motion for a new trial, in part, on the refusal of the court to continue the case. Appended to the motion was the affidavit of the witness wherein the facts it was alleged she would testify to were set forth. It appears to have been undisputed that the witness was too ill to appear and testify, and that she was suffering from a disease of long standing, which at times became aggravated and necessitated confinement to her bed.

It is doubtful whether the application for a continuance sufficiently sets forth the facts appellant expected to prove by his wife. We quote from the application as follows: "The testimony of the said Fannie Perkins is very material to this defendant's defense, and that she was the only person present at the time of the homicide besides Will White, the deceased, and this defendant, and that this said witness heard the conversation between the defendant and the deceased just prior to the homicide and was present when the trouble between them started, and that the deceased, Will White, first drew his pistol and fired it while the defendant and deceased were fighting and scuffling over the deceased's pistol * * *. That all of her testimony is material to the defendant's theory of the case and will corroborate this defendant as to his testimony in this case."

It was incumbent upon appellant to present an application showing on its face the materiality of the absent testimony. Branch's Annotated

Penal Code, sec. 312; Pilot v. State, 38 Texas Crim. Rep., 518, 43 S. W., 1024; Hinman v. State, 59 Texas Crim. Rep., 29, 127 S. W., 222; Bascom v. State, 114 Texas Crim. Rep., 32, 24 S. W. (2d) 437; Shield v. State, 118 Texas Crim. Rep., 509, 38 S. W. (2d) 76. An application for a continuance is defective when it fails to set out what the accused expects to prove by the absent witness, and the facts must be specifically set out in order that the trial court will be able to determine their materiality. Mere conclusions and general averments are not sufficient. Branch's Annotated Penal Code, sec. 312. It is stated as a conclusion that the testimony of the witness was material to appellant's defense. Although the witness would testify, according to the averments in the application, that she heard a conversation between appellant and deceased just prior to the homicide, the nature of the conversation is not shown. It was stated that the witness was present when the difficulty between the parties began, but nowhere was it shown that she would testify to facts showing that deceased began the difficulty. As far as the application reflects the matter, appellant may have been endeavoring to kill deceased when deceased drew his pistol and fired. No attempt was made to set out appellant's version of the transaction. Hence the trial court could not determine whether the testimony would have been material when viewed in the light of appellant's defensive theory.

The application contains an averment as follows: "That said witnesses are not absent by reason of the consent or procurement of the defendant, and that this motion is not made for delay alone but so that justice may be done." In Russell v. State, 88 Texas Crim. Rep., 582, 228 S. W., 948, it was held that the application for a continuance was defective in that it stated that it was not made *solely* for delay. Here the application states that it was not made for delay *alone*. This does not comply with the statute which requires that the application state that it is not made for delay. Subdivision 5, article 643, C. C. P.

It is not shown that the application was a first request for a continuance. In the absence of a showing that the application for a continuance is a first request, it is presumed to be a subsequent application. McKenzie v. State, 116 Texas Crim. Rep., 395, 11 S. W. (2d) 172. In Beckwith v. State, 104 Texas Crim. Rep., 467, 284 S. W., 546, it was held that a subsequent application for a continuance must conform strictly to the statute, nothing being presumed in its favor. Further, it was held that the failure to state that the accused had reasonable expectation of procuring the absent testimony at the next term of court renders a subsequent application fatally defective. Johnson v. State, 114 Texas Crim. Rep., 638, 26 S. W. (2d) 256. Article 544, C. C. P., provides that subsequent applications on the part of defendant shall, in addition to the requisites set forth in article 543, C. C. P., state, among other things, that the defendant has reasonable expectation of procuring the testimony at the next term of the

court. There is no showing in the application under consideration that appellant had reasonable expectation of procuring the testimony of his wife at the succeeding term of court. Hence the application is fatally defective. Johnson v. State, supra; Hale v. State, 112 Texas Crim. Rep., 422, 16 S. W. (2d) 1068. There was no error in overruling the application. It appears to be the rule that where a subsequent application for a continuance fails to comply with the mandatory statutory requisites, it is such an application as appeals alone to the trial judge, and that this court would be in no position to review his action. Matthews v. State, 93 Texas Crim. Rep., 650, 249 S. W., 1072.

In the affidavit appended to the motion for a new trial it was stated, in substance, that the witness would testify that she heard some loud talking in appellant's bed room after deceased arrived; that there was a sound as if a blow had been struck; that after she heard this sound it seemed that she remembered a sound as if appellant had. jumped out of bed; that she heard deceased cursing and then heard the parties scuffling; that she ran through the room where the parties were and saw a pistol; that it was her impression that the pistol was in the hand of deceased; that she ran from the house and after she had left the house she heard a number of shots. On the hearing of the motion for a new trial the state introduced the voluntary statement of the witness made on her examining trial after complaint had been filed charging her with the murder of deceased. In this statement the witness averred, in substance, that when she got in the bed room where deceased and appellant were, deceased was going through the door into the kitchen and was not facing either appellant or the witness; that appellant was standing in the bed room; that the witness ran from the house and that after she had gotten down the street she heard a gun shoot three times in rapid succession; that immediately before the first shot was fired deceased was not doing anything to appellant. In the affidavit of the witness appended to the motion she stated that she was in a nervous condition at the time the examining trial was had and that the statement introduced in evidence by the state had been prepared and she had signed it without being conscious that she had made any such statement. It was further averred that the statement she made in the examining trial was untrue and that if a witness in the case she would testify according to the averments set forth in her affidavit. The averment in the application for continuance that the witness would testify that deceased drew his pistol and fired it was contradicted by the affidavit of the witness. In the affidavit it was stated that she left the house before any shots were fired. The trial court's discretion to determine the probable truth of the testimony of an absent witness does not operate when the affidavit in which it is shown that the witness would testify to the facts averred in the application for a continuance is attached to the motion for new trial. Wiley v. State, 117 Texas Crim. Rep., 449, 36 S. W.

(2d) 495. It is not clear that the trial judge would not have been warranted in the present case in concluding that the witness would not testify as set forth in the application and in her affidavit. In other words, we are not prepared to say that the trial judge was not warranted, in the light of the record, in concluding that the witness would not testify as claimed by appellant. Section 337, Branch's Annotated Penal Code. However, we deem it unnecessary to determine whther the trial court would have been warranted in reaching such conclusion. The application for a continuance being fatally defective in the particulars heretofore pointed out, formed no basis for a complaint in the motion for a new trial on account of the denial of the continuance in the first instance. Brannan v. State, 108 Texas Crim. Rep., 418, 1 S. W. (2d) 279. It may be added that appellant testified on the trial that his wife left the house when the shooting first started and that if she thereafter returned he did not know it. The testimony the wife would have given, according to the affidavit, was to the effect that she had already left the house when the shooting started and that she returned to the house in a few minutes after deceased had been shot. In other words, she would testify that she was away from the house when she heard the shots fired. We would not think that upon a point of this character appellant would desire a witness to contradict his own testimony. It is the rule that if the accused's own testimony on the trial contradicts what he stated he proposed to prove by the absent witness, no error is shown in refusing to continue on account of the absence of such witness. Section 327, Branch's Anntated Penal Code; Yancy v. State, 48 Texas Crim. Rep., 166, 87 S. W., 693.

Appellant alleged in his motion for a new trial that a member of the jury was prejudiced against him, and had previously stated, in substance, that appellant should be electrocuted. A witness for appellant testified that he had heard the juror make the statement previous to the trial. The juror denied that he was prejudiced against appellant and declared that he had made no statement concerning appellant's guilt or innocense. He expressly denied that he had made the statement attributed to him by the witness. Under the decisions of this court there was no abuse of the discretion vested in the trial court in concluding that the juror was not prejudiced. Branch's Annotated Penal Code, sec. 565; Meadors v. State, 101 Texas Crim. Rep., 336, 275 S. W., 829; McKenzie v. State, 116 Texas Crim. Rep., 395, 11 S. W. (2d) 172.

It was further averred in the motion for new trial that the jury had received other evidence in that the fact that appellant had theretofore been convicted and his punishment assessed at confinement in the penitentiary for ninety-nine years had been discussed. It appears from the testimony heard on the motion for new trial that several of the jurors knew that appellant had theretofore been convicted before they were taken as jurors. They had not misled appellant as to this matter. Some of the

jurors testified that they did not hear the matter mentioned in the jury room. Others testified that mention was made of the fact that appellant had been previously convicted, but that they heard no discussion of the matter. One of the jurors testified that the fact that appellant had been previously convicted was not discussed at all. In the condition in which we find the record, the opinion is expressed that the trial court was warranted in reaching the conclusion that the misconduct complained of did not occur. The trial court was vested with discretion to determine the issue upon conflicting testimony. Barnes v. State, 102 Texas Crim. Rep., 155, 277 S. W., 647.

It was averred in the motion for new trial that one of the jurors was related to the deceased by affinity within the third degree. We deem it unnecessary to determine whether the relationship existed. Several witnesses, among them being the juror, testified that appellant made no inquiry of the juror on his voir dire examination touching his relationship to the deceased. Other witnesses testified that the inquiry was made. The juror did not mislead appellant, according to witnesses for the state. The conflict in the testimony was for the trial judge. It is the rule that if the accused accepts the juror without making inquiry as to his relationship to the injured party he will not be heard to complain of such relationship after the verdict. Branch's Annotated Penal Code, sec. 545; Templeton v. State (Texas Crim. App.), 57 S. W., 832; Garrett v. State, 92 Texas Crim. Rep., 338, 243 S. W., 986. The record discloses that the juror and one Lawrence Livingston were first cousins. Deceased's daughter married Lawrence Livingston, the juror's cousin.

Appellant sought to have the jury instructed, in substance, that if he fired any shot at deceased in defense of himself he had the right to continue shooting until the danger or apparent danger ceased, or as long as it reasonably appeared to him that he was in danger. The testimony touching the shots fired by appellant came from his own lips. He said that he fired two shots in rapid succession as deceased faced him with a pistol. He testified that after he fired these shots deceased turned and walked into the kitchen and fell to the floor on his face. He said that he did not fire any more shots at deceased. There was no evidence that any shots were fired after the deceased retreated. Under the circumstances, it was not error to fail to charge on the accused's right to shoot until danger had passed. Branch's Annotated Penal Code, sec. 1968; Woodard v. State, 54 Texas Crim. Rep., 86, 111 S. W., 941; Boaz v. State, 89 Texas Crim. Rep., 515, 231 S. W., 791.

Appellant complains of the action of the trial court in overruling his exception to the charge on the ground that the jury were not properly instructed upon the law of murder without malice. An examination of the charge discloses that the court gave a full and comprehensive charge on the subject.

An examination of all of appellant's contentions leads us to the conclusion that error is not presented.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

### ON MOTION FOR REHEARING.

HAWKINS, JUDGE.—Appellant insists that in treating his request to withdraw his announcement and continue the case as an application for a second continuance we were in error, asserting that when such request is predicated on article 551, C. C. P., which under certain circumstances allows continuance after trial has begun and that such request is not controlled by the same provisions of the statute as govern when the application for continuance is made in advance of the trial. It is certainly true that contingencies may arise after trial has begun bringing into operation article 551 where the ordinary statutory requirements regarding continuance would not be applicable. It is equally true that where the continuance is sought because of the absence of a witness where, for instance, such absence has been occasioned by sickness since the trial commenced, it is incumbent on accused to put the trial court in possession of information as to what the absent witness would testify, in order that the court may exercise his discretion in determining whether the evidence is material. This is very definitely settled in Davis v. State, 60 Texas Crim. Rep., 620, 132 S. W., 932; Williams v. State, 48 Texas Crim. Rep., 325, 87 S. W., 1155; Marta v. State, 81 Texas Crim. Rep., 135, 193 S. W., 323; Hilly v. State, 105 Texas Crim. Rep., 436, 289 S. W., 61. As was said in Hilly v. State (supra), it surely was not the purpose of article 551, C. C. P., to put the accused in a better position than he would have been in had he known before the trial started that the witness was absent and had sought a continuance to secure the testimony. There is copied in our original opinion the language employed by appellant in his application for continuance purporting to advise the court what the expected evidence of his wife would be. It says her testimony "is very material" to appellant. That is a pure conclusion. It also says that she was the only person present at the time of the homicide except appellant and deceased, and that she "heard a conversation between them." Nowhere does it state what she would testify such conversation was. It is further stated that the wife was present when the trouble started and that "deceased * * * first drew his pistol and fired it while defendant and deceased were fighting and scuffling over deceased's pistol." It will be observed that nowhere is it averred that the wife would testify that such were the facts. If appellant's wife had been absent at the beginning of

the trial, and he had sought a continuance based thereon, and had presented an application no more specific as to what evidence he expected from his wife, the court would have been justified in denying the continuance. The court having properly denied the motion to withdraw announcement and continue because of a defective application therefor, the ruling forms no basis for complaint in the motion for new trial on account of the court's action in the first instance. See Brannan v. State, 108 Texas Crim. Rep., 418, 1 S. W. (2d) 279, and cases therein cited.

In our original opinion we adverted to some conflicts between the statement of the absent witness as contained in her affidavit attached to the motion for new trial and the statement made by her in examining court. One conflict which we did not mention is regarded as quite significant. In the affidavit it is stated that as she went through the room where the killing occurred she saw a pistol, and was under the impression it was in the hands of deceased. In her statement at the examining trial she specifically stated that "she did not see any gun on either of the men or anywhere else there at any other time." In qualifying the bill complaining of the refusal of the continuance the court calls attention to the "direct" conflict in the statements referred to. In determining whether a different result might be reached upon another trial in the event the absent witness had testified as claimed in her affidavit, the court was fully warranted in taking cognizance of the conflict mentioned and cannot under the circumstances be held guilty of any abuse of discretion in overruling the motion for new trial. Wiley v. State, 117 Texas Crim. Rep., 449, 36 S. W. (2d) 495; Barfield v. State, 118 Texas Crim. Rep., 394, 43 S. W. (2d) 106; Fox v. State, 119 Texas Crim. Rep., 552, 43 S. W. (2d) 951.

It is urged that we were not authorized in saying in our original opinion that the trial judge was "warranted in reaching the conclusion that the alleged misconduct of the jury did not occur." We have again examined the testimony of the seven jurors who gave evidence regarding that matter on the hearing of the motion for new trial. It is clear that the deliberations of the jury were in a small room and that no discussion of the case occurred at any other place than in said room. Five of the jurors stated that they heard no mention made of a former conviction of appellant nor of the penalty assessed. One of the jurors, Mr. Cooper, swore positively that it was not discussed at all. Another juror, Mr. Duhon, testified that only the evidence produced on the trial was discussed. There then appears a question to said juror, and his answer, as follows: "Q. I asked you with respect to the fact that he had been convicted before and got a sentence of 99 years? A. That was not discussed at all. At least, I did not hear that discussed at all." Two jurors testified that the former conviction and punishment was mentioned. With the record in the condition indicated there seems to have been an issue

regarding the matter. In our judgment this justified the statement in our opinion of which appellant complains.

We now advert to the same question from a different angle, and one not considered originally. Appellant claimed a new trial under subdivision 7 of article 753, C. C. P., which makes it ground for a new trial "where the jury after having retired to deliberate upon a case have received other testimony." In connection with the statute just mentioned, is article 759, C. C. P., which provides: "The effect of a new trial is to place the cause in the same position in which it was before any trial had taken place. *The former conviction shall be regarded as no presumption of guilt, nor shall it be alluded to in the argument.*" It has been held that the article quoted extends to any argument or discussion of a former conviction by the jury in the jury room. Horn v. State, 50 Texas Crim. Rep., 404, 97 S. W., 822; Moore v. State, 52 Texas Crim. Rep., 336, 107 S. W., 540. It has also been held that where there was a mere casual allusion to a former conviction and no discussion of the same had it will not afford cause for reversal. Moore (supra); Baines v. State, 43 Texas Crim. Rep., 490, 66 S. W., 847, 851; Gaines v. State (Texas Crim. App.), 77 S. W., 10; Henderson v. State, 104 Texas Crim. Rep., 495, 283 S. W., 497; Wood v. State, 86 Texas Crim. Rep., 550, 217 S. W., 1037. From the Baines case we quote: "While strictly construed, the statute would appear to prohibit the barest allusion to a former conviction, yet we do not take it that this would constitute reversible error. Campbell v. State, 35 Texas Crim. Rep., 160, 32 S. W., 774; Brantly v. State, 42 Texas Crim. Rep., 293, 59 S. W., 892. Evidently the intent and purpose of the statute was to guard appellant against the use by the state of his former conviction as an evidence of his guilt. * * *"

Assuming that the two jurors who said the former conviction and penalty were mentioned gave a correct version of the matter, then under what circumstances did it occur? It is quite clear from the record that there was no discussion of the incident but that it was merely alluded to. Every juror who was asked about the matter on the hearing for new trial said he knew about the former conviction and penalty before being taken on the jury. So far as this record reveals every juror who sat in this trial may have known of it beforehand. If any inquiry was made of them on their voir dire examination regarding such knowledge it is not made to appear from the record. If it had been ascertained that they did know about it an inquiry as to whether such fact would influence them as jurors in the present trial would have been proper. The only two jurors who said such former conviction was mentioned asserted that such fact had no influence on them in reaching their verdict, or in assessing the penalty agreed on. Usually such claims of jurors are not given serious consideration. From the examination of witnesses and the repro-

duction of certain evidence on this trial the fact of a former trial became known to the jury. Conceding that an allusion was made in the jury room to the former conviction and penalty, the fact that there was no discussion of it leads us to conclude that under the authorities cited and referred to in those opinions the trial court should be sustained in overruling the motion for new trial based upon the claim of misconduct of the jury.

In the motion for rehearing appellant complains of the reproduction of the testimony of the witness Carr. We have not been able to find in the record any bill of exception bringing such complaint forward.

The motion for rehearing is overruled.

*Overruled.*