### H. Hughes v. The State.

No. 7055. Decided October 25, 1922.

Rehearing Denied November 29, 1922.

**1.—Murder—Challenge for Cause—Practice in Trial Court.**

Where, upon appeal from a conviction of murder assessing the death penalty, the record shows appellant's bills of exception to the overruling of his challenge for cause, to certain jurors, based upon the ground that they had such opinions as disqualified them and the trial court appends the statement to said bills to the effect that none of said jurors sat upon the jury, there was no reversible error, it not being shown that objectionable jurors served on the jury.

**2.—Same—Evidence—Dying Declaration—Predicate—Bill of Exceptions.**

Without discussing the failure of the bills of exception to set out sufficient facts to make apparent the errors severally complained of, it being our custom not to enforce rigidly the rule in cases where the death penalty is inflicted, the court has examined the statement of facts and finds the predicate laid for the introduction of the dying declaration sufficient.

**3.—Same—Evidence—Telegram—Practice in Trial Court.**

It was shown that a few days prior to the alleged homicide a telegram was sent to the deceased at New Orleans concerning certain moneys, and defendant admitted getting a telegram from the body of deceased, and that he threw it away; there was no error in the admission of testimony that defendant was seen to throw away such telegram, and to admit the same in evidence.

**4.—Same—Immaterial Testimony—Harmless Error.**

We are of the opinion that the testimony with reference to the use made of certain funds sent by the witness to the deceased was not material, however, the same was harmless error. Following Cole v. State, 48 Texas Crim. Rep., 443, and other cases.

**5.—Same—Character of Defendant—Evidence.**

When the defendant takes the witness stand in his own behalf, he thereby puts in issue his character for truth and veracity, and there was no error in asking him relative to certain papers found on his person.

**6.—Same—Evidence—Opinion of Witness—Facts Before Jury.**

The facts with reference to the wounds on the hand of the deceased having been stated by the witness and being fully before the jury, the giving of the opinion of the witness that they were not such wounds as could have been caused by deceased striking a man did not present reversible error.

**7.—Same—Evidence—Rebuttal Testimony—Character of Wounds.**

Where defendant had testified and had attempted to describe the fight in which he said deceased met his death, there was no error in admitting testimony describing the wounds found by the witness on the body of the deceased, defendant having testified that he simply used his hands to fight with.

**8.—Same—Argument of Counsel—Practice on Appeal.**

Where, upon trial of murder, the evidence showed that the person guilty of same must have had a heart fatally bent upon mischief, there was no reversible error in the reference of private prosecutor that appellant was a hardened criminal, under the evidence in the instant case.

**9.—Same—Bill of Exceptions—American Legion.**

Where the bill of exceptions complaining of the reference in argument to the appearance of private counsel as a representative of the American Legion, did not show what preceded or elicited said objection, etc., there was no reversible error.

**10.—Same—Indictment—Malice—Misspelling—Words and Phrases.**

Errors in spelling will not vitiate an indictment unless they go to the extent of so mutilating same as to affect its meaning, or to render it probable that the accused was misled in some way, and the motion in arrest of judgment that the word "malice" did not appear in the indictment, but the word "malace" did appear, there was no reversible error, nor was there any error in the contention that the name of the deceased was designated as "Rogersby," which occurred by improper spacing of the words.

**11.—Same—Rehearing—Ex Parte Affidavit—Practice on Appeal.**

This court is precluded from consideration of *ex parte* affidavits, filed originally in this court, and is confined to reviewing questions which

are raised in the lower court and properly brought forward in the record, and the affidavits attached to appellant's motion for rehearing, with reference to disqualification of some members of the jury, cannot be considered.

Appeal from the District Court of Brewster. Tried below before the Honorable Joseph Jones.

Appeal from a conviction of murder; penalty, death.

The opinion states the case.

*A. M. Turney,* for Appellant, by appointment of court.—On question of challenge to jurors:—Stagner v. State, 9 Texas Crim. App., 440; Trotter v. State, 37 Texas Crim. Rep., 468.

On question of dying declaration: Ledbetter v. State, 5 S. W. Rep., 226; Cleaver v. State, 90 id., 311; Walker v. State, 206 id., 96; Jackson v. State, 115 id., 262; Brown v. State, 112 id., 80; Phillips v. State, 94 id., 1051.

On question of opinion of witness on wound of deceased: Hatch v. State, 8 Texas Crim. App., 416; House v. State, 8 id., 565; Conn v. State, 11 id., 291; Crawford v. State, 215 id., 501; Sterling v. State, —Texas Crim. Rep., 249; Hunnicutt v. State, 18 id., 500; Ricks v. State, 19 id., 308.

On question of insufficiency of indictment and motion in arrest of judgment: Rutherford v. State, 13 Texas Crim. App., 93; Black v. State, 46 Texas Crim. Rep., 109; Haygood v. State, 103 S. W. Rep., 890; Hickman v. State, 72 id., 587.

On question of charge of court: O'Brien v. State, 27 Texas Crim. App., 339; Farrar v. State, 42 Texas, 275; Garza v. State, 38 Texas Crim. Rep., 317; Dobbs v. State, 51 id., 113.

*R. G. Storey,* Assistant Attorney General, for the State.

LATTIMORE, Judge.—Appellant was convicted in the District Court of Brewster County of murder and his punishment fixed at death.

From the facts it appears that appellant and deceased were traveling in a stock car together. They were seen together near the train in the railroad yards at Sanderson, the county seat of the county east of Brewster county in which the prosecution was had. This was about 1:30 o'clock the afternoon preceding the alleged homicide that night. About 4:30 of the same day the two men were seen at supper at Marathon, a station between Sanderson and Alpine, the county seat of Brewster County. Deceased paid for the supper. When the train reached Alpine the cries of deceased for help were heard and a search of the stock car revealed his body near a window at the end of the stock car, there being evidence that his body had been dragged

from a point near the center of said car, and he was shot and badly beaten and bruised. The bullet entered the body from near the spine between the seventh and eighth ribs and ranged upward into the liver and lungs, and caused the death of deceased that same night. There were upon his body a number of bad cuts and bruises, and the fingers of one hand were mashed and the bones broken. Appellant was not in the car when it reached Alpine but was arrested later that night at a little place called Toronto six or seven miles from Alpine. When arrested he was found in possession of a watch, chain, book and other articles which were identified as property of deceased. On the trial appellant admitted that he had shot and beaten deceased at the time in question, and had taken from him property. His explanation of this situation was that deceased made an abusive remark about the mother of appellant and that they began to fight, and that during the fight appellant drew his pistol and shot deceased, and that he later in the struggle beat him over the head with the pistol, and that before he left the car he put a bandanna handkerchief around the mouth of deceased and took from him his watch, chain, etc.

Appellant has a bill if exceptions to the overruling of his challenge to certain jurors based upon the ground that they had such opinions as disqualified them. The trial court appends a statement to said bill to the effect that none of said jurors sat upon the jury. It is not shown in the bill or otherwise in the record that any objectionable juror was forced upon appellant, or that he had any objection to any of the men who composed the jury, or that any objection was made by him to any of the men who composed same. In Sections 542 and 543 of his Annotated Penal Code Mr. Branch cites numerous decisions of this court sustaining the general proposition that before this court would reverse a case for apparent errors in overruling challenges for cause to veniremen, it must be shown that objectionable jurors sat in the trial.

Appellant has six bills of exception complaining of the admission of various parts of the dying declaration of deceased, the same objection appearing in each bill, which objection is as follows: "Because the State had not laid a proper predicate for the introduction of the dying declaration of deceased; that the State had never shown that the deceased was conscious of impending death; that deceased had never stated or realized that he was going to die when the alleged statements were made. That said evidence was hearsay, immaterial, and served no proper purpose in this case. That some of said statements were made in answer to questions propounded to him by the various persons present before he had made said statements."

Without discussing the failure of each of said bills to set out sufficient facts to make apparent the errors severally complained of, it

being our custom not to enforce rigidly the rules in cases where the death penalty is inflicted, we have examined the statement of facts to ascertain the sufficiency of the predicate laid for these statements, and as to the materiality of the testimony contained therein and also the voluntary character of such statements, and we have concluded that the predicate laid was sufficient and that the testimony was material, and that no questions were asked the deceased leading to any answers which were suggested thereby. The physician who was called to examine deceased the night of the homicide testified that after examining him he told him that he was going to die, and it is in testimony that other parties besides the physician made to him substantially the same statement. Some of the statements objected to had been made before the doctor arrived, but it was shown by the witnesses that afterward the same facts were repeated by deceased. Without discussing in detail the several statements referred to in said bills of exception, they cover generally the statements of the deceased that he and appellant had fallen in with each other and had traveled together for several days and were on their way west on said freight train, and that he had furnished money to feed appellant and that as they came toward Alpine on the train that night sitting on the sanded floor of the stock car, some one shot him and then beat him over the head and took from him his money and his other property. Deceased also said that "it was hell to feed a man and then have him shoot you in the back for twenty dollars." Deceased gave a description of his companion but did not seem to know his name. We find nothing in the statements of deceased supporting any objection made thereto, and have concluded there was no error in the admission of each and all of them.

It was shown that a few days prior to the alleged homicide a telegram was sent to deceased at New Orleans concerning certain moneys. Appellant admitted getting a telegram from the body of deceased after the assault in the stock car and that he threw said telegram away at the house of a Mexican to which he went that night after leaving Alpine. There was no error in the admission of the testimony of said Mexican to the effect that he saw appellant throw said telegram away, nor do we observe any error in the admission in evidence of said telegram which was found by said Mexican and turned over to the officers: Nor was the objection sound which was made to the testimony of Miss Casis who said that she sent from Austin, Texas, a telegram to deceased at New Orleans regarding some money and which was identical or similar to the one thrown away by appellant and found by the Mexican on the night of the killing. Nor do we find any error in allowing Miss Casis to state that she heard nothing from deceased after sending the telegram in question till she heard of his death about January 26, 1922, and that she saw his remains in Austin, Texas, on January 27th of said year.

Miss Casis was asked in reference to the use made of the funds sent by her to deceased. An objection was made to this and the witness stated that she knew what he did with the money and that he used it in paying the expense of obtaining a patent for an invention. We are of opinion that this evidence was not material, but after careful consideration thereof we can find in it nothing capable of any possible harm to appellant. Not every error in the admission of immaterial evidence is reversible. Saddler v. State, 20 Texas Crim. App., 195; Jinks v. State, 35 Texas. Crim. Rep., 365; Shaw v. State, 29 Texas Crim. App., 175; Cole v. State, 48 Texas Crim. Rep., 443.

We think that when one on trial for crime voluntarily takes the witness stand in his own behalf he thus puts in issue his character for truth and veracity. While appellant was on the witness stand in the instant case he was asked relative to certain papers found on his person. The only objection made thereto was that appellant had not put his character in issue. His character being in issue, the objection was without merit.

A bill of exceptions complains that the sheriff, after testifying that he saw wounds on the hand of deceased, was allowed to state that they were not such wounds as could have been caused by deceased striking a man. The officer had testified that the hand of deceased was badly lacerated and the third finger mashed and the bones thereof broken. The facts having been stated, and being fully before the jury, we do not think the giving of said opinion such erroneous action as would in any event call for reversal at our hands.

Objections made to the testimony of the sheriff in describing the wounds found by him on the body of deceased, the grounds of which were that such testimony was not properly in rebuttal, would not be well taken. Appellant had been on the witness stand and had attempted to describe the fight in which he said deceased met his death. Even if this court was inclined to more rigid rules regarding the order of introduction of testimony, which it is not, this being left largely to the discretion of the trial courts, still we could not say that the enumeration and description of the wounds on the head and body of deceased would not serve to rebut the testimony of the accused who claimed to have acted in self-defense against an assault on him by the deceased, who simply used his hands to fight with.

It is shown that at some place in his argument the private prosecuting lawyer referred to appellant as a hardened criminal, and at another time stated to the jury they should give the death penalty to that murderer. The record reflects the fact that in his youth appellant had been sent to an industrial or reform school and there kept for a period. The almost undisputed facts in this record are such that it is difficult for one to read them without concluding that the perpetrator of the crime is guilty of murder and that he must have

a heart so fatally bent on mischief as to justify the appellation of a hardened criminal.

We are unable to appraise the bill of exceptions complaining of the reference in argument to the appearance of private counsel as the representative of the American Legion. What preceded or elicited said explanation is not shown. Whether it was called out by some remark of appellant or his counsel does not appear. No effort was made to have the jury instructed not to consider said remark. The court in his qualification to the bill of exceptions says there was nothing to show that any ex-service men were on the jury. Where private prosecution appears it is frequently the effort of the defense to elicit facts tending to reflect *animus,* in the prosecution. But before we would be justified in sustaining the objection contained in this bill more facts would have to be made to appear and additional light given the making of the remark in question.

Complaint is made in the motion in arrest of judgment that the word malice did not appear in the indictment but the word "malaice" did appear. Errors in spelling will not vitiate an indictment unless they go to the extent of so mutilating same as to affect its meaning or to render it probable that the accused was misled in some way. Part of said motion in arrest of judgment was directed at what is claimed by appellant to have been an allegation that the name of deceased was "Rogersby." An inspection of the indictment shows that it charges "did then and there unlawfully and with malace aforethough kill C. Rogers by then and there shooting him the said C. Rogers with a gun." It is very evident that the pleader omitted to properly space his words in drafting his indictment and that his intent was to say, "did then and there unlawfully and with malice afore throught kill *C. Rogers by* then and there shooting him the said C. Rogers with a gun." We do not consider this matter at all serious.

We have not been disposed to be captious regarding the manner or method of raising the various objections and errors complained of. Appellant was given the death penalty and we have gone through the record in his case giving to him the benefit of our careful consideration to each point made in his behalf, but finding no reversible error in the record, an affirmance is ordered.

*Affirmed.*

ON REHEARING.

November 29, 1922.

HAWKINS, Judge.—Appellant has attached to his motion for rehearing affidavits to the effect that some of the jurors were members of the Alpine Post of the American Legion, and that other jurors

had relatives who were members thereof. It is desired that such affidavits be considered in connection with certain alleged harmful argument of the special prosecutor reverted to in our opinion. We are precluded from consideration of *ex parte* affidavits filed originally in this court, but are confined to reviewing questions which are raised in the lower tribunal, and properly brought forward in the record. Only by observing this rule can we perform the functions of an appellate court. All other matters urged in the motion received our most careful attention upon original consideration by reason of the severe penalty inflicted. We are confirmed in our opinion that nothing in the record will justify us in disturbing the judgment.

The motion for rehearing is overruled.