## John A. McKenzie v. The State.

No. 11575.   Delivered May 9, 1928.
Rehearing denied November 28, 1928.
Second motion for rehearing denied January 16, 1929.
Reported in 11 S. W. (2d) 172.

The opinion states the case.

*Nowlin Randolph* and *A. S. West,* both of San Antonio, for appellant.

*Lamar Seeligson,* Dist. Atty., and *Temple Calhoun,* Asst. Dist. Atty., both of San Antonio and *A. A. Dawson,* State's Attorney, of Austin, for the State.

CHRISTIAN, JUDGE.—The offense is murder; the punishment, death.

On the night of September 10th, 1927, at about nine o'clock, the superintendent of Piggly-Wiggly store saw appellant standing across the street at a root beer stand, a distance of about sixty or seventy feet from his store. He phoned police officers, who appeared on the scene in a short time. The superintendent had been advised by the manager of the store that there was a man acting in a suspicious manner across the street from the store. When the police officers arrived on the scene, Sam Street, Chief of Police of San Antonio, and Tate, a policeman, got out of the car on the right side. Wayne Parks, another policeman, got out on the left side of the car and started around back of the car. Street walked toward appellant. Appellant was leaning against the wall. When Street was within eight or ten feet of appellant, Tate, a policeman who was accompanying him, said: "What are you doing here, young man? We are officers." Appellant had his left hand in his coat pocket. When Tate made the remark referred to, appellant turned and shot from his pocket. Appellant then immediately reached under his left shoulder and drew a Lugar automatic pistol, and at the same time fired two shots from his coat pocket. He then began firing at one of the police officers from his pocket and at chief of police Street and another officer with the Lugar, running backwards while firing. Appellant fired twelve or fifteen shots. When the first two shots were fired, Chief of Police Street fell. At the time appellant fired the first shot none of the officers had drawn a weapon, no pistols being drawn by the officers until after appellant began firing. The officers then fired on appellant, he running away and at the same time firing at them. Appellant received flesh wounds in the legs. Sam Street was killed, about three shots having taken effect. Appellant was arrested in an attic. The pistols which he used on the night of the homicide were found in his possession. Appellant did not testify, but offered witnesses who testified that Chief of Police Street walked up to appellant, flashed a light from a flashlight in his face and said: "What are you up to?" and that appellant then backed off and a shot was heard. The officers wore no uniforms nor insignia. The state's witnesses denied that Chief of Police Street had a flashlight in his hand. It is undisputed that none of the officers drew pistols until after appellant had fired the first shot. The officers were positive that appellant was informed that they were officers, whereas ap-

pellant's witnesses stated that they were in a position to have heard what was said, and that they did not hear Street or any of the police officers tell appellant that they were officers.

The indictment was returned by a special grand jury called for the purpose of investigating the homicide. Appellant made a motion to quash the indictment on the ground that the law does not authorize the convening of a special grand jury for the purpose of investigating a "single and isolated" case. Article 1920 R. S. 1925, authorizes the convening of special terms of the district court when deemed advisable by the district judge, and authorizes the district judge, in his discretion, to empanel a grand jury for such special term. It is patent from a reading of the statute referred to that appellant's motion was properly overruled.

By bill of exception No. 2 it is shown that appellant filed an application for a change of venue predicated on alleged prejudice. The application was supported solely by the affidavit of appellant. The state duly controverted the application and the court heard evidence on the issue. It is unnecessary to detail or discuss the evidence. The statute requires that the application be supported by the affidavit of the defendant and of at least two credible persons who are residents of the county where the prosecution is instituted. Article 562 C. C. P. It has been held that this requirement is not complied with by supporting the application by the affidavit of the defendant and one other person. Gibson v. State, 110 S. W. 41.

Appellant filed a motion to postpone the trial and give him additional time to prepare for trial. It was alleged in the motion that the offense was alleged to have been committed on the 10th day of September, 1927; that a grand jury was empaneled on September 12th, which returned an indictment against appellant on the same day; that on the day the indictment was returned the court appointed two attorneys to represent appellant in the trial of his case; that both of said attorneys were inexperienced in the practice of criminal law; that the public was in an inflamed condition of mind by reason of the publicity given to the alleged offense; that from the date of their appointment appellant's attorneys had constantly worked on the law and facts of the case; that they had not learned the law and felt that the case could not be tried according to law; that they were not familiar with the rules of procedure and, therefore, would be unable to protect appellant's rights by proper bills of exception or other action; that his attorneys had not had time to interview witnesses or to investigate and find out what the

witnesses knew; that they had learned of the existence of witnesses but had not had time to find them or ascertain who they were or their whereabouts; that there was a witness present at the time of and immediately before the homicide whose name appellant did not know; that appellant's attorneys had talked to certain witnesses who were afraid to discuss what they knew relative to the homicide; and that said witnesses were in possession of material evidence beneficial to appellant; that appellant believed he had a legal defense to the charge against him if given time to secure evidence; that appellant had been shot twice and dangerously wounded on the occasion of the homicide and had been placed in jail while suffering excruciating pain; that due to said pain he had been mentally unable to consult with his attorneys and give them a coherent statement of the facts of his case; that he was then suffering great pain; that the public mind was inflamed against him and that he should not be brought to trial while such condition existed; that his brother and the wife of his brother who might be of assistance to him had been incarcerated in jail; that his father, who lived in Michigan, and his sister-in-law, who lived in Missouri, and his brother, who also lived in Michigan, according to his belief, would furnish money and funds to aid him in conducting his defense; that he had prepared letters and sent telegrams to said parties; that his attorneys were not at the time sufficiently prepared on the law and facts of the case to enable them to represent him in an intelligent and efficient manner. It was prayed that the court fix the date of trial "at such time in the future as will give his attorneys time within which to prepare his case for trial in such a way that it may be tried in accordance with the meaning and intent of the law." The trial was had on September 15, 1927.

The state filed written replication to the motion, and offered in support of its contest one of the county physicians, who testified that appellant was not dangerously wounded and that he was physically and mentally able to undergo trial. Other witnesses for the state testified that they had talked to appellant and that he talked in a rational and coherent manner. The court qualified appellant's bill of exception as follows:

"The court stated to counsel for the defendant that if they wished additional counsel appointed that he would be only too glad to appoint additional counsel. Further, the court also asked Pete McKenzie, the defendant, whether he was satisfied to go ahead now with the counsel that the court had appointed and the defendant,

Pete McKenzie, informed the court that he was satisfied. The court informed the defendant, Pete McKenzie, that if he was not satisfied that he would appoint additional counsel, and the defendant, Pete McKenzie, informed the court that counsel appointed by the court was satisfactory to him. The court informed counsel for the defendant that if any witness refuses to talk to either of counsel for the defendant, that if they would report the fact to the court that he would see that the witness or witnesses would talk. The court further informed the defendant that during the present special term, Mr. Randolph had represented some five or six defendants in this court and had represented them ably and that as to Mr. West he is a teacher of law. The Court further stated to counsel that he thought they were tardy in urging their incompetency—that if they were of that opinion they should have so informed the court at the time of their appointment and should have refused to accept the responsibility. Upon this statement by the Court both defense counsel jumped to their feet and stated that they were perfectly competent and able to take care of the case and that they had been misunderstood; that they only wanted more time. The Court then stated that since counsel had injected the issue of incompetency he felt it his duty to appoint additional counsel, as to whose competency there could be no question. Counsel for the defendant requested the Court not to appoint additional counsel, stating that they preferred to go ahead assuring the Court that they felt perfectly able to take care of defendant. The court then asked the defendant if he were satisfied with the counsel appointed for him; he answered 'absolutely.' The Court then told defendant that if he were not satisfied to say so, and the Court would stop the proceedings and appoint additional counsel. Defendant answered, 'I am satisfied.' The court then stated to counsel for defendant that if at any time during the trial any legal question should arise about which counsel were not fully advised, that if they would make such fact known, the Court would give Counsel ample time to inform themselves. Counsel stated that they were willing to proceed."

It is not contended that appellant was arraigned until the expiration of at least two entire days after the day on which a copy of the indictment was served on him. Article 493 C. C. P. Neither is it contended that the provisions of Article 494 C. C. P. were not complied with, it appearing that appellant had more than one day to prepare for trial after counsel were appointed. The reasons asserted in the application relative to the lack of preparation of ap-

pellant's attorneys and their inability to secure material testimony for his defense do not make it apparent that, in the time allowed, appellant's attorneys were unable to properly prepare for trial. The finding of the court that appellant was physically and mentally able to undergo trial was supported by sufficient and undisputed testimony. The court's qualification of the bill of exception shows that appellant's attorneys felt themselves fully capable of protecting his rights and that after the motion for further time was presented they stated that they were willing to proceed. Appellant fails to suggest in his motion the nature of the defense which he expected to interpose. There were few eye witnesses to the transaction which resulted in the homicide and it is manifest from an examination of the record that it would have consumed but little time to have talked to the witnesses and learned the facts within their knowledge concerning the homicide. Considering the application in the light of the evidence and of the court's qualification to the foregoing bill of exception, No. 3, we find no abuse of discretion on the part of the trial court in overruling the motion. See Mathews v. State, 249 S. W. 1073; Apolinar v. State, 244 S. W. 813.

Appellant filed an application for a continuance, wherein he alleged that one John Doe, whose name and residence he did not know, was absent from court and that he expected to prove by said witness, if present, that he was present when Sam Street was killed and saw one of the officers fire a shot before appellant fired his pistol or made any hostile move. The witness was described as being "a man about 5 feet, 7 inches tall, American, wearing light narrow-brimmed Panama hat and horn rimmed glasses, clean shaven, about 28 years old, weight about 135 pounds." Supporting the application, appellant filed an instrument in writing wherein he alleged that there was prejudice and hatred against him in Bexar County; that his attorneys had not had sufficient time to prepare for trial; and that he had been unable to secure the attendance of his father upon court, he being sorely in need of the advice and financial aid of his father. The state controverted the application as to diligence. The court qualified the bill of exception as follows:

"An application for subpoena was filed asking that 'John Doe the man who was present when the shooting commenced,' be subpoenaed for defendant. The clerk issued the subpoena and placed same in the hands of the sheriff who went out to the scene of the shooting and made inquiries concerning such witness and obtaining no information made a return that he was unable to find said person

and from the description was unable to determine who was wanted. Later when this motion was filed the Court stated to counsel that as their motion only referred to 'John Doe the man who was present when the shooting commenced' and that there being two or three men present under subpoena from the state who were present when the shooting commenced, that he had better speak to defendant and see if he could not get a better description. Thereupon counsel talked with the defendant and obtained the further description which the Court permitted counsel to interline in his motion. The Court then ordered the clerk to issue a subpoena for John Doe with the new description. This subpoena was placed in the hands of the sheriff who was ordered to look over all witnesses in attendance to see if any corresponded to the description given. If not to make inquiries of all the witnesses and see if he could get any information concerning said witness and if not to go out to the scene of the shooting and make inquiries in the neighborhood. Court was then adjourned and when resumed the officer reported that he had followed the court's orders and had been unable to get any trace or information of said witness. Then when counsel read paragraph two of his motion wherein he sets up lack of experience of the attorneys and paragraph three wherein he sets up the failure of his father to be here and hire counsel of his own choosing, the Court stopped Counsel and stated that he thought the matter of competency of Counsel had been disposed of in the preceding motion (contained in Bill of Exception Number 3) but if not proceedings had better be halted until it could be; whereupon Counsel stated that both motions were prepared and written before the first was presented to the Court, and that they did not intend to urge that point, but that they want to urge that defendant was without relative or friend to give him moral support and consolation in his hour of trial. Whereupon the Court stated that as to the witness the identity of the witness, the probability of securing said witness, being so uncertain and indefinite and the uncertainty that he would testify as expected, since no one especially the defendant so far as is known ever heard any statement from the witness would not warrant a continuance for said witness, and that the moral support or comfort of the presence of the father even if here being of such doubtful value to the defendant, the Court did not feel warranted in granting a continuance."

It is not shown that the application is a first application. In the absence of a showing that an application for a continuance is a

first, it is presumed to be a subsequent application. Article 544 C. C. P., requiring that a subsequent application shall state that "the testimony cannot be procured from any other source known to the defendant," was not complied with, and the application is fatally defective. Brannan v. State, 1 S. W. (2d) 279. If considered as a first application, the failure to state the name of the witness as required by subdivision 1, Article 543 C. C. P. renders the application defective. Thus whether treated as a first or subsequent application, it does not purport to be a statutory one. Not being a statutory application, it appealed alone to the trial judge, whose action in overruling it this court would not be in a position to review. Mathews v. State, 249 S. W. 1072. If subject to review by this court, the trial court's action in denying a new trial by reason of the application was warranted. No witness testified on the trial that the alleged witness was present at the scene of the homicide. Appellant failed to testify in his own behalf, and the witnesses testifying for him failed to raise the issue of self-defense. The undisputed testimony shows that appellant fired the first shot without excuse or justification. In the state of the record, therefore, the court did not abuse his discretion in determining, in the absence of the affidavit of the witness, that the proposed testimony was probably not true and was such as that if it had been present there would not have been any likelihood of a different verdict. McCulley v. State, 280 S. W. 223.

It is disclosed by bill of exception No. 5 that appellant presented a written motion to summon a second special venire, alleging that of the 100 men originally summoned 69 had not been served and 34 had been excused for legal and adequate cause. The court's qualification of the bill of exception shows that the motion was not made until the veniremen had responded; that the jurors were awaiting examination at the time; that no motion to quash the venire had been made; and that the request was made before the first venire had been exhausted or disposed of. Until a special venire has been exhausted or discharged, with appellant's consent, the court is without authority to order the issuance and execution of another venire. Hall v. State, 12 S. W. 739. It is the general rule that the fact that the entire number of jurors ordered is not summoned would not be ground for quashing the venire. Regittano v. State, 257 S. W. 906. In the absence of proof of lack of sufficient diligence, in order to require a quashal of the venire on account of non-service of a part thereof, the accused must show that the number of jurors

available under the venire was insufficient to enable him to obtain an impartial jury. Jones v. State, 214 S. W. 322. No effort being made to quash the venire on the ground that the number of jurors present was insufficient to enable appellant to obtain an impartial jury, the court was warranted in requiring appellant to proceed with the selection of the jury from those present.

As shown by bill of exception No. 6, after the venire had been exhausted, appellant orally moved the court that the sheriff's department be required to make further effort to summon all absent veniremen. The request was denied and talesmen ordered to be summoned. The court states in the qualification appended to the bill that the sheriff's return showed the reason for not serving the absent veniremen; that some were dead, one in New York, one in Corpus Christi and one in Dallas; that appellant's counsel had this information before beginning his examination of the venire; that attachments had been issued for the absent jurors when the list had been called; that during the examination of the venire two or three jurors were brought in under attachment; that the others were not found; that no motion to quash the venire or postpone the examination was made. The court did all in his power to secure the presence of the absent jurors. The diligence exercised by the sheriff was not questioned. Appellant did not object to proceeding with the examination of the veniremen during the time further effort was being made to secure the presence of the absent jurors nor had he made a motion to quash the venire. It seems clear to us that these facts constitute a waiver, and that appellant is in no position to complain. See Chandler v. State, 131 S. W. 598. We, therefore, hold that the court's action in ordering talesmen was correct. Article 596 C. C. P.

Bill of exception No. 7 shows that appellant challenged the array of talesmen, claiming that the officers summoning said jurors wilfully summoned them for the purpose of securing a conviction. The evidence heard by the court failed to sustain the recitals in the motion, and we discern no error in the action of the court in overruling the challenge. Thomas v. State, 272 S. W. 149.

Bills of exception Nos. 8 and 9 deal with the action of the trial court in overruling appellant's challenge of certain jurors for cause. Appellant peremptorily challenged the objectionable jurors. If the court erred in refusing to sustain the challenge, there is nothing to show that objectionable jurors sat in the trial. It not being shown that objectionable jurors sat in the trial, reversible error is

not manifested. Hughes v. State, 245 S. W. 440; Walker v. State, 283 S. W. 787.

Bill of exception No. 10 deals with the action of the court in overruling appellant's second challenge to the array of talesmen. The evidence heard by the court failing to support the recitals of the motion, error is not manifested.

By bill of exception No. 11 appellant complains of the action of the court in overruling his challenge of a juror for cause. It is recited in the bill that appellant was forced to accept the juror because of the fact that he had exhausted his peremptory challenges. The court qualified the bill by stating that in overruling the challenge for cause, he granted appellant an additional challenge, with the statement to appellant's counsel that appellant might exercise it on the juror in question. The qualification further recites that appellant withdrew the challenge for cause and accepted the juror. It is patent that the bill fails to manifest error.

There was no error in refusing to consider appellant's "motion to reopen motion for change of venue." As qualified bill of exception No. 12 shows that the court advised appellant at the time the motion was overruled that he would be given full opportunity on motion for new trial to present additional testimony on the question of prejudice. Bill of exception No. 20 reflects the additional testimony heard on the motion for a new trial touching the question of prejudice. Such testimony fails to sustain appellant's contention.

Many exceptions were reserved to the argument of the district attorney. In every instance, the bills of exception dealing with the subject reveal that appellant made a general objection to an extended argument, a part of which argument was unquestionably proper. It was incumbent on appellant to single out the remarks deemed objectionable and request the court to instruct the jury not to consider them. The bills of exception are too general to be entitled to consideration. Improper argument of counsel for the state only requires a reversal where, in the judgment of this court, the remarks complained of, in connection with the surrounding circumstances, probably resulted to the prejudice of the accused. Patterson v. State, 221 S. W. 597. The argument complained of was largely an appeal to the jury on the part of the district attorney to aid him in the enforcement of the law. In Green v. State, 268 S. W. 746, we held that the fact that the district attorney called upon the jury to aid him in the enforcement of the law did not call

for a reversal. Again, it was not improper for the district attorney to insist that the law "says the death penalty is right." Smith v. State, 280 S. W. 201. Nor was it improper for the district attorney to impress the jury with the fact that it was their duty to disregard emotions which might impel the return of a verdict based on mercy. In several instances, the argument set out in the bills consists of deductions which may have been properly drawn from facts in evidence. That such was not the case is not shown by the bills. It is our conclusion that the bills of exception relating to the argument of the district attorney are insufficient to manifest reversible error.

In his motion for a new trial appellant alleged newly discovered evidence, stating therein that he had discovered a witness who would testify that he found a flashlight in the hands of deceased immediately after he was killed. It is further stated that appellant did not know of the testimony until after the trial. The evidence heard by the court on the motion discloses that one of appellant's counsel talked to the witness during the trial of the case; that he asked the witness if he saw the shooting; but that he did not ask the witness what he knew about the transaction until after the trial had terminated. Appellant utterly failed to use diligence in procuring the evidence he claims to have been newly discovered. On a motion for new trial for newly discovered evidence it must be shown that the evidence could not have been procured by the exercise of due diligence. Runnels v. State, 276 S. W. 289. Upon the trial judge rests the discretion to pass upon the merits of a motion for a new trial and his action will not be disturbed in the absence of an abuse of discretion. There being an utter lack of diligence on the part of appellant to discover the evidence in question and the entire record leading us to the conclusion that the production of such evidence upon another trial would not likely result favorably to appellant, we are constrained to uphold the action of the trial court in overruling the motion.

By bill of exception No. 22 appellant asserts that the court erred in overruling his motion for a new trial based on his claim that one of the jurors was incompetent to sit on the jury by virtue of the fact that his application for compensation on the ground of nervous and mental disability incurred during the World War was then pending. The juror admitted that an application of the nature mentioned had been made to the United States Government. He stated that the affliction was merely due to nervousness and affected

his ability to maintain an interest in the positions of employment he had held. He stated that he understood the evidence and knew what he was doing when he rendered his verdict. There is no evidence to the effect that the juror was insane. The court was warranted in concluding that he was sane and a qualified juror.

In bill of exception No. 23 it is shown that appellant alleged in his motion for a new trial that G. W. Carson who had served on the jury was disqualified because of prejudice against appellant. It was claimed by appellant that the juror stated to one Waldrop that appellant was guilty of first degree murder and ought to be sent to the electric chair and that if he, the juror, could have his way he would hang appellant to a telephone post. The court heard evidence on the motion. A witness by the name of Parks testified on examination for appellant that the juror in question told him before being selected on the jury that he knew appellant well; that he had a bad reputation in the army for carrying guns and getting into trouble; that it would be well to send appellant away or hang him. The witness Waldrop testified that the juror stated to him that he believed appellant was guilty of first degree murder and that he should be strung up to a telephone pole. Another witness testified that the juror stated to her in the court room shortly before going on the jury that appellant was "going to get all that is coming to him." The juror testified that he didn't remember making the statement attributed to him by the witness Parks; that he had expressed no opinion as to what should have been done with appellant prior to the time that the verdict was brought in. He denied that he made the statement attributed to him by the third witness and declared that he had made no statement concerning the guilt or innocence of appellant or what should be done with him. He stated that he had not known appellant until he had been brought into the court room to be tried. In Branch's Annotated Penal Code, Section 565, page 288, the rule is stated as follows:

"When it is sought to show on the hearing of the motion for new trial that a juror before the trial had expressed an opinion of defendant's guilt or had made statements which showed a prejudice against defendant, the decision of the trial court on that issue will be sustained by the appellate court unless clearly wrong if the evidence bearing thereon was conflicting and was sufficient, if believed, to justify the action of the trial judge."

In Meadors v. State, 275 S. W. 829, in discussing a similar question this court said:

"When there is a controversy raised as to this character and kind on motion for new trial, and the trial court hears the testimony, his decision is not reversible under such circumstances and is only reversible when the testimony is all one way or when the decision is clearly wrong."

Applying the announcement of the decisions to the instant case, we fail to find reversible error in the refusal of the court to grant the motion.

There are some objections to the court's charge on self-defense. In view of the special charges on the subject given at his request, appellant is in no position to complain. We may add that we have been unable to find any evidence in the record raising the issue of self-defense.

We have carefully examined each contention made by appellant and fail to find reversible error.

The judgment is affirmed.

*Affirmed.*

The foregoing opinion of the Commission of Appeals has been examined by the Judges of the Court of Criminal Appeals and approved by the Court.

ON MOTION FOR REHEARING.

MORROW, Presiding Judge.—The action of the trial court in refusing to charge the venue upon the appellant's motion and of this court in sustaining the action of the trial court in the particular mentioned is vigorously assailed. Special emphasis is laid upon the fact that in the opinion of this court the insufficiency of the application for a change of venue was adverted to. From an examination of the appellant's bill of Exception No. 2, relating to the matter, it is made manifest that the trial court, in refusing the change of venue, did not base his action upon the insufficiency of the application though it was not supported by the affidavits of two credible persons as required by Art. 562, C. C. P., 1925. The defect in the pleading was ignored by the court and evidence was heard. The appellant introduced without objection from the State a number of newspaper publications. The State also introduced witnesses whose testimony was heard by the court. After hearing the evidence the court, according to the record here, before overruling the

motion, stated to the appellant's counsel that if they believed that if any person with whom they had talked in their endeavor to get witnesses touching the change of venue had not expressed their true opinion or expressed an opinion favorable to the appellant on the issue, or if they knew of any one who would be likely to testify in the appellant's favor and give the names of such persons to the court, process would be issued for them and they would be brought into court so that the appellant might be given the benefit of their testimony. Counsel for the appellant then stated to the court that they knew of no such person or persons and that they could not find a person who believed that the appellant could not obtain a fair trial in the county and that the fact that they could not find such a person convinced the attorneys that prejudice existed. The appellant introduced several witnesses who testified to having read some of the articles published in the newspapers and who declined to give the opinion that there was prejudice against the appellant, but said that by reason of the notoriety that the matter had been given it would require an unusual length of time to get a jury. It appeared from these witnesses that there were about 20,000 qualified voters whose names were in the jury wheel, but in the opinion of the witnesses a jury could be obtained that would give the accused a fair and impartial trial; that in the opinion of the witnesses there were a number of people in the county who were qualified and who were unacquainted by hearsay or otherwise with any of the facts bearing upon the case. The State introduced several witnesses who testified to circumstances showing their acquaintance with the public sentiment and who expressed the opinion that there existed no prejudice or other conditions that would prevent the selection of a jury who would give the accused a fair trial. It was shown that the city of San Antonio had a mixed population consisting of people of various nationalities.

"It is a general and wholesome rule, we think, which declares that the inference of prejudice requiring a change of venue is not to be drawn from the fact alone that newspapers published in the vicinity have contained news articles descriptive of the offense or editorials denunciatory of the accused." (Cox v. State, 90 Tex. Crim. Rep. 109.)

There are instances in which the acts of one accused of crime have been the subject of public controversy in which newspapers have taken part to a degree that rendered the publications important factors in creating such prejudgment or prejudice as would render

it improbable that pursuing the methods provided by law an impartial trial could be had. Examples are Fleming v. State, 62 Tex. Crim. Rep. 653; Gallagher v. State, 40 Tex. Crim. Rep. 296; Cox v. State, 90 Tex. Crim. Rep. 106; in which cases the publications went far beyond the point of giving the news of the day such as is exemplified by the publications relied upon by the appellant in the present record.

From the case of McNeely v. State, 104 Tex. Crim. Rep. 267, the following quotation is taken:

"Touching the duty of the trial court and of this court upon an application for change of venue, the law, as deduced from the statutes and the decisions is, as we understand, that where the application is upon the ground of prejudice and is controverted, the burden is upon the accused to prove the existence of such prejudice against him or against his case that it is not probable that he can have a fair and impartial trial.

The duty is upon the trial court to weigh the evidence and if therefrom there arise conflicting theories, one tending to show prejudice of the nature mentioned and the other the contrary, the discretion as to the court is to adopt either. In the absence of abuse of this discretion the judgment is not to be disturbed upon the appeal. If, however, the evidence is such that it leads to the conclusion that bias, prejudice or prejudgment of appellant or his case is such as to render it improbable that a fair and impartial trial can be given him, the trial court is without discretion to refuse the application. See Carlisle v. State, 255 S. W. Rep. 991, and authorities therein collated."

As the matter of the application for a change of venue comes before this court, the evidence heard, aside from any technical rule touching the sufficiency of the pleading applying for a change of venue, makes clear the fact that in overruling the motion the learned trial judge did not abuse the discretion which the law vested in him, and this court is without legal authority to enter a judgment declaring that in refusing to change the venue there was an abuse of discretion.

After the motion for a change of venue was overruled and after the selection and impaneling of the jury and the pleading was presented to the jury, the appellant made in writing a motion designated a "motion to open the change of venue," setting up in substance that there was a dangerous combination against him instigated by influential persons by reason of which he could not expect

a fair trial. The motion was not verified by compurgators, and a hearing on it was declined by the court with the statement to counsel that the motion was out of order but that the defendant would be given an opportunity to present the matter on the motion for new trial, at which time counsel would have full opportunity to present any testimony he might have as to prejudice against the defendant, as well as any other defensive matter. In connection with the motion for new trial which was filed on the 19th day of September and heard on the 24th of that month, a formal motion for a change of venue, duly supported by affidavits, was presented and evidence thereunder heard by the court. It was based on both of the statutory grounds, namely: that of prejudice and of dangerous combination. The evidence adduced seems to have been the testimony of two women, the substance of their testimony being that they had no knowledge of any dangerous combination, and in support of their belief that he could not get a fair trial they were unable to detail any facts. A fair inference from their testimony as to what they were trying to portray is that they thought there was too much speed in the trial and that the verdict was excessive. The witnesses were both opposed to the infliction of the death penalty for crime. The matter, as a motion for a change of venue, would have no legal status. The evidence, however, was entitled to consideration in connection with the motion for new trial as bearing upon the soundness of the trial court's decision in overruling the motion for a change of venue in the first instance. It seems obvious that the evidence adds nothing and certainly nothing that would deprive the trial court of its discretion to overrule the motion for a change of venue and the motion for new trial.

Bills Nos. 3 and 4 deal with the complaint of the appellant on the refusal of the court to postpone the trial in order to give counsel more time for preparation and because of the appellant's physical condition due to wounds that he had received. This matter is set forth in a comprehensive manner in the original opinion. That part of the motion which dealt with the physical condition of the appellant as bearing upon his ability to conduct his trial was met by the testimony of two witnesses introduced by the State, one of them a doctor and the other a layman. The doctor's testimony was to the effect that the wounds upon the appellant were flesh wounds in the calf of his leg; that he had examined the appellant twice and treated him; that there were no broken bones; that he regarded the appellant both physically and mentally able to be present and con-

duct his trial. There was an extended cross-examination of the doctor which but confirmed his statements upon direct examination. Another witness (a newspaper reporter) gave testimony that he had talked to the appellant and had taken an interview from him which was published in the paper; that he appeared rational and coherent in his remarks. No other testimony was tendered upon the subject. The testimony of the witnesses mentioned was uncontroverted. In the original opinion there are quotations from the qualification of the bill which portray the condition of the record as it now appears before this court.

The indictment was presented on the 12th of September, and the trial began on the 15th, which was two days after the return of the indictment. Therefore, the time expiring between the service of copy of the indictment and the beginning of the trial complied with the statute. Art. 493, C. C. P., 1925, declares that the arraignment shall not take place until after the expiration of two days after the indictment is filed. Counsel was appointed in accord with Art. 494, C. C. P., 1925. That the appellant was put to trial with unusual haste is not open to question. It has been often declared that the purposes of the statute (Art. 493, supra) is to afford the accused opportunity after arrest to prepare for trial, to determine whether written pleadings are necessary in the case, and to decide upon his course as to the trial of the case. Reed v. State, 31 Tex. Crim. Rep. 35; and numerous other cases collated in Branch's Ann. Tex. P. C., Sec. 343. It is manifest that in enacting the statute it is the view of the legislative department of the government that for the purposes mentioned, in the absence of exceptional facts, two days would suffice. Whether additional time should be accorded in a given case would be discretionary with the trial judge subject to review upon a showing that the discretion was abused. In the present instance the accused was accorded the statutory time to prepare for trial. Evidence was heard in the trial court touching the existence of the facts alleged as a basis for further delay. Under the circumstances, unless the evidence heard was inadequate to warrant the ruling of the trial court on the motion or there were other tangible facts upon which this court would be justified in reversing the ruling of the trial court, there would exist in this court no authority to set aside the verdict of conviction because of the refusal of the trial court to delay the trial. This court has no right to arbitrarily overturn the ruling of the trial court. The scope of authority of the Court of Criminal Appeals, like that of all other

governmental agencies, is limited and extends no further than to reverse the judgment of the trial court for errors of law which are deemed material and prejudicial to the accused or for the want of evidence sufficient to overcome the presumption of innocence. In passing upon the motion the court stated to counsel that if at any time during the trial any legal questions should arise of which counsel were not fully advised, the court, would, upon that being made known, accord ample time for counsel to inform themselves. They then stated that they were willing to proceed. This matter is discussed in more detail in the original opinion. Upon the record before it, this court would not be authorized to interfere with the finding of the jury because the trial court regarded the time allowed for preparation for trial allowed by statute sufficient. As supporting their claim that in declining to postpone the trial there was reversible error committed, counsel points to the case of Jones v. State, 204 S. W., 437. An examination of the record and opinion in that case discloses the fact that in his motion for new trial Jones gave very good reasons and set up very cogent facts supported by the affidavits of witnesses which were deemed by this court sufficient to show the probability of a different result upon another trial. Moreover, Jones interposed a defense both by plea and by evidence, and testified upon the trial denying the commission of the offense with which he was charged. In the present case, neither on the original hearing nor on the motion for new trial was there given any defensive evidence which would justify the homicide. The identity of the appellant as the slayer was established, as was the fact that by his act the deceased was killed. The sole defensive theory suggested is that the deceased flashed a searchlight upon the appellant and inquired what he was up to. It affirmatively appears that the act of the deceased was not accompanied by any threat or the exhibition of weapons, either by the deceased or by his companions.

The refusal of the court to continue the case is deemed to have been correctly dealt with in the original opinion in this case. It may be added, however, that on the hearing of the motion for new trial some days subsequent to the trial, the averments of the motion to continue were not strengthened by the testimony of the appellant or any other witnesses. This is suggestive of the idea that if a delay had been accorded, it would have availed nothing.

Nothing is found in the statute or in the interpretation thereof which would require the trial court, under the circumstances stated

in the bill, to cause process to be issued for the absent veniremen. It is made plain from the bill that the veniremen who were absent were shown by proper return to be unavailable. The complaint is not that the veniremen who had been *summoned were absent*. If such had been the case, a different rule would have obtained. See Hudson v. State, 28 Tex. Crim. App. 323; Roquemore v. State, 11 S. W. (2d) 316.

Touching the claim that the court erred in permitting the officers, because of their alleged prejudice, to summon the veniremen, it appears from the bill that evidence was heard and its uncontroverted effect was to negative the soundness of the claim.

The new evidence upon which a new trial was sought was the testimony of C. K. Morriss. On the hearing of the motion, Morriss was called as a witness and testified that immediately after the shooting he picked up near the body of the deceased a flashlight which was near the pistol and hat. The witness was subpoenaed, was present during the trial and conversed with counsel for the appellant, who made inquiry of the witness if he saw the shooting. A negative reply was received and no further inquiry was made. As stated in the original opinion, the evidence was not newly discovered within the meaning of the law. Fisher v. State, 30 Tex. Crim. App. 502; Branch's Ann. Tex. P. C., Sec. 204. The fact that after the deceased was shot and while he lay upon the ground a flashlight was observed in or near his hand, was in evidence through other testimony and was not contradicted. Cumulative evidence, even if newly discovered, is not ordinarily good grounds for a new trial, especially so when the fact is not a controverted one. Henderson v. State, 1 Tex. Crim. App. 432; Branch's Ann. Tex. P. C., Sec. 203.

Three talesmen were challenged for cause. The facts upon which the challenges are based were such as to support the court's ruling in overruling the challenges. Neither of the men sat upon the jury, however. Two of them were excused upon extra peremptory challenges accorded the appellant, and one was excused upon a peremptory challenge by the State. Neither of the men against whom the objection was urged having sat upon the jury, the absence of injury is obvious.

Several bills of exception, covering some fifteen pages of the transcript, are devoted to complaints of the remarks of the State's Attorney in his argument to the jury. The necessity of keeping this opinion within reasonable limits precludes the quotation of the

remarks. Such expressions as might with propriety have been omitted from the argument, when considered in connection with the context, fail to impress this court as transcending the limits of legitimate debate. From Pierson v. State, 18 Tex. Crim. App. 564, the following quotation is taken:

"Before we will reverse a conviction because of remarks of prosecuting counsel, it must clearly appear to us, 1, that the remarks were improper, and, 2, that they were of a material character, and such as, under the circumstances, were calculated to injuriously affect the defendant's rights."

The remarks made in the present instance appear to have been but comments upon facts in evidence and deductions therefrom and made in response to the remarks of counsel for the appellant. When, as in the present instance, complaint is made of an argument of counsel which transgresses no provision of the Constitution or statute, the propriety of its making and its probable effect are not to be measured alone by the words used, but the facts adduced and the issues involved are potent factors in determining the soundness of the complaint.

The following is a synopsis of the State's evidence: About nine o'clock at night, McKenzie was standing upon the street about sixty feet from and opposite a Piggly-Wiggly store. The manager of the store became suspicious and officers were called. Five of them arrived in automobiles. Tate (one of them) said to McKenzie: "I am an officer. What are you doing here?" McKenzie at once began firing from his coat pocket on the left-hand side, and with his right hand drew a pistol from under his arm and continued firing with both pistols. No weapons were drawn, exhibited or used by the officers until after the appellant fired. As McKenzie fired he ran backwards. In all he fired some twelve or fifteen shots. When the first shot was fired, Street and Tate were some six feet from the appellant. Each of the officers testified in substance as above. As the appellant retreated firing, a number of shots were fired at him, which were estimated at about thirty. An instant after the first shot was fired, Street fell to the ground. A shot was fired at him. The appellant escaped to an attic and was arrested the same night. From his possession were taken two pistols which were identified as those used by McKenzie in firing the shots mentioned. These pistols were exhibited to the jury as was likewise the coat worn by the appellant which had a

hole in the pocket on the left-hand side. Appellant was wounded in the legs.

A synopsis of the appellant's evidence is as follows: McDaniel, an employee in a business house near the scene, testified that he saw a part of the difficulty; that Street walked up to the appellant and said: "What are you up to?" and that the appellant backed off and a shot was fired. The witness stooped and ran, and as he ran he looked around and saw Tate firing. He ran into the back of the store and came to the front. He then saw Street lying upon the ground. The witness heard nothing else said before the shooting except: "What are you up to?" The witness could not tell who fired the first shot. Edith Morriss, who worked in a shop nearby, saw the appellant standing upon the street, and some minutes afterwards saw a car with men in it drive up. She knew none of them. The first man out of the car had a flashlight in his hand and walked up to the man standing on the sidewalk, flashed a flashlight in his face and asked him what he was up to, and then the shooting started. She heard no other words. She did not know which man first went to the appellant and spoke to him. She did not know whether it was Street or Tate who spoke, but heard the words, "What are you up to, boy?" and then heard a shot fired. McKenzie's hand was in his left pocket when Street walked up to him and the words, "What are you up to?" were spoken. She saw Street who was lying upon the street. In his right hand he had a flashlight. She did not see any pistol in his hand.

The appellant had two gunshot wounds. One was in the right leg below the knee; the other was in the left leg, not quite one-third of the leg from the ankle to the calf. The wound passed downward and backward and indicated that he was shot from the front. The one in the right leg was lower than that in the left. The wounds indicated that they were inflicted while the appellant was facing the person who fired the shots which wounded him. There were no bones broken. None of the wounds were dangerous. They were merely flesh wounds.

It was shown that the officers were not in uniform.

Street was killed by the wounds received.

In substance the jury were informed by the charge of the court that if the appellant was not aware that the parties approaching him were officers or believed himself in danger of serious bodily injury, he would be justified in using such force as appeared to him reasonably necessary to protect himself against danger, real or appar-

ent, and that it was from his standpoint at the time that his conduct was to be viewed, and if so found an acquittal should result. They were also instructed that if he acted upon a reasonable appearance of danger, he would not be chargeable with malice aforethought although he may have used greater force than was necessary under the circumstances for his protection, and that under such circumstances there could be no punishment of more than five years' confinement in the penitentiary. In the instruction mentioned the court seems to have been generous to the accused. The record seems practically without facts to excuse or justify the homicide. There is difficulty in finding any evidence that the appellant was assaulted or in danger of injury or death, or that he so regarded himself.

An assumption that the verdict resulted from the argument which the bills of exception exhibit, rather than from the incidents of the tragedy which the evidence portrays, would be violent indeed.

Confining himself within the record as made upon the trial and having regard for the limitations against personal abuse and other expressions exceeding the limits of proper argument, (Thompson on Trials, 2nd Ed., Vol. 1, chap. 29), counsel for the State may insist upon the infliction of the death penalty. This is illustrated by many decisions of this court. See Thomas v. State, 33 Tex. Crim. Rep. 607; Calderon v. State, 63 Tex. Crim. Rep. 639; Holcomb v. State, 103 Tex. Crim. Rep. 352; Price v. State, 220 S. W. Rep. 91; Boxley v. State, 273 S. W. Rep. 592; Marshall v. State, 104 Tex. Crim. Rep. 619. In Thompson on Trials, 2nd Ed. Vol. 1, sec. 965, we find the following:

"Forensic strife is but the method, and a mighty one, to ascertain the truth and the law governing the truth. * * * The right of discussing the merits of the cause, both as the law and the facts, is unabridged. The range of discussion is wide. * * * His illustrations may be as various as the resources of his genius; his argumentation as full and profound as learning can make it; and he may, if he will, give play to his wit, or wings to his imagination. To this freedom of speech, however, there are some limitations. His manner must be decorous. * * * So, too, what a counsel does or says in the argument of a cause must be pertinent to the matter on trial before the jury, and he takes the hazard of its not being so."

In appraising the argument, the bills of exception have been treated upon their merits, and their consideration has not been restricted by any fault in their preparation. The same is true with

reference to the other bills of exception found in the record. In making this statement, it must be understood that in valuing a bill of exception, the court is bound to take note of the explanation of the trial judge accompanying the bill, unless it be shown over the signature of the judge that the qualification was made against the protest of the accused or his counsel. This court has no means of knowing that a ruling of the trial court is opposed by objection unless it is revealed by a bill of exception. The trial judge has no right to explain, modify or qualify a bill of exception save with the consent of the accused or his counsel. When a bill of exception comes to this court, certified by the trial court and qualified by him, it is bound to presume that it has the consent of the accused or his counsel unless the contrary appears over the certificate of the trial judge. See Revised Civil Stat., 1925, Art. 2237; Thomas v. State, 83 Tex. Crim. Rep. 325; Exon v. State, 33 Tex. Crim. Rep. 461; McKnight v. State, 93 Tex. Crim. Rep. 402; Anderson v. State, 95 Tex. Crim. Rep. 350; Clayborn v. State, 100 Tex. Crim. Rep. 325; Lilley v. State, 100 Tex. Crim. Rep. 375; Kemp v. State, 106 Tex. Crim. Rep. 103; Plattenburg v. State, 107 Tex. Crim. Rep. 44; 22 Amer. Law Rep. 270. The remarks last made are designed to make it plain that this court has no choice other than to consider in connection with the bills found in the record the qualifying or explanatory statements of the trial court.

The modesty of counsel, who by appointment of the court, represented the appellant upon the trial and in this court, has led them to injustice to themselves in assuming that the present situation in which the appellant finds himself is due to any lack of learning or experience upon their part. Having placed upon them an onerous obligation, the record here bears unmistakable testimony to their ability, their skill, their courage and their fidelity, in discharging the painful duty.

We have failed to discover any evidence that the court was coerced, threatened or in any way influenced by impending mob violence. The appellant's silence upon the trial, on the undisputed evidence touching his mental condition at the time of the trial, appears to have been from choice. If there were matters in his mind of a defensive nature, they were not disclosed by him at the time the motion for new trial was heard.

If, in fact, during the months that have elapsed since the trial of the appellant there has come to light evidence that the haste

with which he was brought to trial resulted in depriving him of facts in his favor which have since become available, the Constitution, in its munificence, affords a tribunal with power to relieve him. This court, however, restricted by the rules of law set forth in the statutes and Constitution and by the evidence heard upon the trial, is constrained to overrule the motion for rehearing. It is so ordered.

*Overruled.*

### ON APPLICATION TO FILE SECOND MOTION FOR REHEARING.

LATTIMORE, JUDGE.—Appellant presents his request for leave to file second motion for rehearing, setting up two grounds which have not been advanced, and therefore have not been passed upon by this court hitherto. The special term of court at which he was tried was specifically called by the regular district judge of the 94th Judicial District to convene on July 11, 1927, and to close on September 17, 1927, and his contention is that the special judge who sat in his case was without power to enter an order, which appears to have been in fact made, extending said special term from September 17th to such time as this case then on trial should be concluded; and that all acts of said special judge after September 17th, 1927, were void. We do not agree with this contention. Conceding that said special judge was duly and legally selected, and that he qualified, and properly began the trial of appellant, it would seem impossible to hold otherwise than that he was the "Judge presiding" in said case when it became obvious that the case could not be concluded by September 17th and when there arose a necessity for making the order extending the term of the court. Art. 1923 of our 1925 Revised Civil Statutes pointedly provides that in such case "The judge presiding" shall have power and may, if he deems it expedient, extend the term of said court until the conclusion of such pending trial. If the Legislature had intended that such extending order should be made by the regular judge of such court, they could easily have so stated instead of saying, as they did, that such order should be made by "The judge presiding." A special judge may preside at a special term. Texas Cent. Ry. Co. v. Bender, 75 S. W. Rep. 561; DeArman v. State, 80 Texas Crim. Rep. 147. The death of the regular judge during the term held by a special judge, does not end the term of court. Glover v. Albrecht, 173 S. W. Rep. 504.

We see nothing in the other point raised by appellant, viz., that the trial was had in the 37th district court room instead of holding same in the room where the 94th district court was ordinarily held. If such sanctity attached to a room, there would be a sad situation if repairs were necessary, or a new court house ordered, or if authorities having the building in charge should deem it proper to move courts from one room to another. Atwood v. State, 96 Texas Crim. Rep. 249.

The request for leave to file second motion for rehearing will be denied.

*Denied.*